FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

**JAN 1 1 2007**

Stephan Harris, Clerk
Cheyenne

**GARY R. SCOTT**
**AMANDA M. GUNDLACH**
HIRST APPLEGATE, P.C.
1720 Carey Avenue, Suite 200
P. O. Box 1083
Cheyenne, WY 82003
(T) 307-632-0541
Fax 307-632-4999

### UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| TETON MILLWORK SALES, a Wyoming corporation, | }<br>}<br>} |
| Plaintiff, | } **07 C V  0 1 4 -J** |
| vs. | } Civil No. _____ |
| ROGER SCHLOSSBERG, | }<br>} |
| Defendant. | } |

## *NOTICE OF REMOVAL*

Defendant Roger Schlossberg, under 28 U.S.C. Section 1446, and expressly reserving all rights otherwise to respond to this lawsuit, removes the action filed under Civil Action No. 30179 in the District Court of Albany County, Wyoming, Second Judicial District, to the United States District Court for the District of Wyoming based on diversity jurisdiction.

**HIRST & APPLEGATE**
A Professional Corporation
*Law Offices*
1720 Carey Avenue, Suite 200
P.O. Box 1083
Cheyenne, Wyoming 82003-1083

## *BACKGROUND*

On 8 December 2006, Teton Millwork Sales filed a Complaint in the District Court of Albany County, Wyoming, Second Judicial District, styled *Teton Millwork Sales vs. Schlossberg*, Civil Action No. 30179. The Complaint was served on Defendant on 12 December 2006 in Hagerstown, Maryland.

In the Complaint, Plaintiff alleges abuse of process and fraud against Roger Schlossberg in his capacity as a receiver/trustee appointed by the Family Court of Jefferson County, West Virginia.

## *DIVERSITY JURISDICTION EXISTS*

Diversity jurisdiction exists under 28 U.S.C. Section 1332(a)(1) because this action is between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. Plaintiff alleges in its Complaint that it is a Wyoming corporation. Defendant is a Maryland resident. Plaintiff's counsel has represented to the undersigned that more than $75,000 is in dispute, including punitive damages.

Upon filing this Notice of Removal, Roger Schlossberg will provide written notification to Plaintiff and will file a Notice of Removal attaching a copy of this Notice of Removal with the Clerk of the District Court of Albany County, Wyoming, Second Judicial District. A copy of the Notice is attached to this Notice of Removal.

**HIRST & APPLEGATE**
A Professional Corporation
*Law Offices*
1720 Carey Avenue, Suite 200
P.O. Box 1083
Cheyenne, Wyoming 82003-1083

The District Court of Albany County, Second Judicial District, is located in the United States District Court for the District of Wyoming.

Copies of all process, pleadings, and other orders served upon Defendant in the state action are being filed with this Notice, as required by 28 U.S.C. Section 1446(a) and U.S.D.C.L.R. 81-1.

For the foregoing reasons, this action is removed to this Court.

Dated: 11 January 2007.

                              ROGER SCHLOSSBERG, Defendant

                              BY: _____
                              GARY R. SCOTT, #5-1939
                              HIRST APPLEGATE, P.C.
                              Attorneys for Defendant
                              1720 Carey Avenue, Suite 200
                              P. O. Box 1083
                              Cheyenne, WY 82003
                              (307-632-0541

### *CERTIFICATE OF SERVICE*

I certify the foregoing *Notice of Removal* was served upon all parties to this action pursuant to the Federal Rules of Civil Procedure on 11 January 2007, and that copies were served as follows:

| | |
|---|---|
| C. M. Aron | [ ✓ ] U.S. MAIL |
| Aron and Henning, LLP | [   ] FED EX |
| 1472 North 5th Street, Suite 201 | [   ] FAX |
| Laramie, WY 82072 | [   ] HAND DELIVERED |
| | [   ] ELECTRONIC MAIL |

                              _____
                              OF HIRST APPLEGATE, P.C.
                              Attorneys for Defendant

**HIRST & APPLEGATE**
A Professional Corporation
*Law Offices*
1720 Carey Avenue, Suite 200
P.O. Box 1083
Cheyenne, Wyoming 82003-1083

GARY R. SCOTT
AMANDA M. GUNDLACH
HIRST APPLEGATE, P.C.
1720 Carey Avenue, Suite 200
P. O. Box 1083
Cheyenne, WY 82003
(T) 307-632-0541
Fax 307-632-4999

THE DISTRICT COURT OF THE SECOND JUDICIAL DISTRICT

OF THE STATE OF WYOMING IN AND FOR ALBANY COUNTY

Civil Action No. 30179

| | |
|---|---|
| TETON MILLWORK SALES, a Wyoming corporation, | } } } |
| Plaintiff, | } } |
| vs. | } } |
| ROGER SCHLOSSBERG, | } } |
| Defendant. | } |

## NOTICE OF REMOVAL

Please take notice that on 11 January 2007, the Defendant in the above-entitled action, filed a Notice of Removal to remove the civil action styled *Teton Millwork Sales vs. Schlossberg*, Civil Action No. 30179, from the District Court of the Second Judicial District of the State of Wyoming in and for Albany County, to the United States District Court for the District of Wyoming.

Please take further notice that on filing the Notice of Removal with the United States District Court for the District of Wyoming, Roger Schlossberg has also filed a copy of the Notice of Removal which is attached to this Notice of Removal with the clerk of The District Court of the Second Judicial District of the State of Wyoming in and for Albany County, to effect removal under 28 U.S.C. Sections 1441 and 1446.

Dated: 11 January 2007.

ROGER SCHLOSSBERG, Defendant

BY: _____
GARY R. SCOTT, #5-1939
HIRST APPLEGATE, P.C.
Attorneys for Defendant
1720 Carey Avenue, Suite 200
P. O. Box 1083
Cheyenne, WY  82003
(307-632-0541

**HIRST APPLEGATE**
A Professional Corporation
Law Offices
1720 Carey Avenue, Suite 200
P O Box 1083
Cheyenne, Wyoming 82003-1083

## CERTIFICATE OF SERVICE

I certify the foregoing *Notice of Removal* was served upon all parties to this action pursuant to the Wyoming Rules of Civil Procedure on 11 January 2007, and that copies were served as follows:

| | |
|---|---|
| C. M. Aron<br>Aron and Henning, LLP<br>1472 North 5th Street, Suite 201<br>Laramie, WY 82072 | [✓] U.S. MAIL<br>[ ] FED EX<br>[ ] FAX<br>[ ] HAND DELIVERED<br>[ ] ELECTRONIC MAIL |

OF HIRST APPLEGATE, P.C.
Attorneys for Defendant

**HIRST APPLEGATE**
A Professional Corporation
*Law Offices*
1720 Carey Avenue, Suite 200
P O Box 1083
Cheyenne, Wyoming 82003-1083

| | |
|---|---|
| STATE OF WYOMING  ) | IN THE DISTRICT COURT |
| ) ss. | |
| COUNTY OF ALBANY  ) | SECOND JUDICIAL DISTRICT |
| | Civil Action No. 2C-176 |

TETON MILLWORK SALES, )
a Wyoming corporation, )
                               )
                    Plaintiff, )
                               )
vs. )
                               )
ROGER SCHLOSSBERG, )
                               )
                    Defendant. )

### COMPLAINT

COMES NOW Plaintiff TETON MILLWORK SALES ("Teton"), by and through its attorneys, ARON and HENNIG, LLP, and for its Complaint against the above-named Defendant states and alleges as follows:

#### Facts Common to All Counts

1. Under the provisions of Article 5, Section 10 of the Wyoming Constitution and Wyoming Statutes §§ 5-1-107 and 1-5-107 (2005 ed.) this Court has jurisdiction over this matter and the parties.

2. Venue is proper in this Court, in that the claims herein arose from the direct and intentional actions of Defendant Roger Schlossberg ("Schlossberg") within Albany County, Wyoming, and from his direct contacts with persons and entities located in Albany County, Wyoming.

3. Schlossberg is an attorney at law, not licensed to practice in the State of Wyoming.

4. Plaintiffs' damages exceed this Court's minimum jurisdictional amount.

5. Teton is a Wyoming business corporation in good standing since 1996.

6. Teton has conducted business in Wyoming and at various times has maintained its principal business office in Wyoming.

7. All times relevant hereto, Teton maintained a registered office in Laramie, Wyoming.

8. At all times relevant to this Complaint, Michael Palencar, a resident of Maryland, was a shareholder of Teton and at various times performed services for Teton.

9. Apart from his rights as a shareholder, at all times relevant hereto Michael Palencar possessed no rights whatsoever with regard to any asset or property owned by Teton.

10. Apart from his rights as a shareholder and limited authority to manage some assets of the corporation, at all times relevant hereto Michael Palencar possessed no authority to act on behalf of Teton and had no corporate management authority within Teton.

11. At all times relevant hereto, Michael Paloncar possessed no authority to bind Teton.

12. Michael Paloncar is not a party to this action.

13. Michael Paloncar was married in 1989 and in January 2002, his wife instituted a divorce action in the Family Court of Jefferson County, West Virginia, styled as Civil Action No. 02-D-3 (hereinafter, the "Michael Paloncar Divorce").

14. Teton was not a party to the said Michael Paloncar Divorce action in the Family Court of Jefferson County, West Virginia, nor to any related proceeding during the pendency of the divorce action.

15. The Family Court of Jefferson County, West Virginia, is a court of limited jurisdiction.

16. During the course of the Michael Paloncar Divorce proceedings, Schlossberg was appointed as "Trustee" and subsequently as "Special Receiver" by the Family Court of Jefferson County, West Virginia.

17. To the extent Schlossberg had any authority over property or proceedings in the State of West Virginia, Schlossberg's power to act extended geographically and substantively no further than the subject matter jurisdiction of the Family Court of Jefferson County, West Virginia, by which Schlossberg was appointed, and such other ancillary jurisdiction as he may have obtained through proper proceedings and court order.

18. The Family Court of Jefferson County, West Virginia, does not have, and at all times relevant hereto did not have, subject matter jurisdiction over the actions of Defendants in the State of Wyoming.

19. At no time relevant hereto was Teton before the Family Court of Jefferson County, West Virginia.

20. At no time relevant hereto did the Family Court of Jefferson County, West Virginia, assert or have jurisdiction over any asset of Teton located in Wyoming.

21. At all times relevant to the wrongful conduct alleged herein, Schlossberg knew that Michael Paloncar owned 25% of Teton's issued and outstanding shares.

22. At all times relevant hereto, Schlossberg knew that Michael Paloncar's father, Joseph Paloncar, owned 25% of Teton's issued and outstanding shares, and was the President and Chief Executive Officer of Teton, responsible for management of the corporation.

23. At all times relevant hereto, Schlossberg knew that in addition to Michael Paloncar and Joseph Paloncar two other shareholders each owned 25% of Teton's issued and outstanding shares.

24. At all times relevant hereto, Schlossberg knew that Teton was a Wyoming Corporation which at various time had conducted business in Wyoming and had its principal place of business in Wyoming.

TETON MILLWORK SALES v. SCHLOSSBERG     COMPLAINT     PAGE 2

25. The Family Court of Jefferson County, West Virginia, presently does not have, and at all times relevant hereto did not have, any *in rem* jurisdiction over property located in the State of Wyoming that is the subject of this Complaint.

26. The Family Court of Jefferson County, West Virginia, presently does not have, and at all times relevant hereto did not have, any *quasi in rem* jurisdiction over property located in the State of Wyoming that is the subject of this Complaint.

27. At all times relevant hereto, the Family Court of Jefferson County, West Virginia, had no *in personam* jurisdiction whatsoever over Joseph Palonear or his property located outside Jefferson County, West Virginia.

28. At all times relevant hereto, the Family Court of Jefferson County, West Virginia, had no jurisdiction whatsoever over Teton, or over any property owned by Teton located outside Jefferson County, West Virginia.

29. The Family Court of Jefferson County, West Virginia, does not have, and at all times relevant hereto did not have, subject matter jurisdiction over the actions of Teton in the State of Wyoming.

30. In his capacity as Special Receiver or Trustee, by virtue of such authority as may have been delegated to him by the Family Court of Jefferson County, West Virginia, Schlossberg did not have subject matter jurisdiction over the actions of Teton in the State of Wyoming.

31. In his capacity as Special Receiver or Trustee, by virtue of such authority as may have been delegated to him by the Family Court of Jefferson County, West Virginia, Schlossberg did not have *in rem* or *quasi in rem* jurisdiction over any property located in the State of Wyoming.

32. In the absence of an order from a court of competent jurisdiction, Schlossberg did not have any authority to act in the State of Wyoming in his capacity as Special Receiver or Trustee or by such authority as may have been delegated to him by the Family Court of Jefferson County, West Virginia.

33. In the absence of an order from a court of competent jurisdiction, in his capacity as Special Receiver or Trustee or by such authority as may have been delegated to him by the Family Court of Jefferson County, West Virginia, Schlossberg did not have any authority to take any action with regard to any property located outside Jefferson County, West Virginia.

34. As set forth herein, in January 2004, Schlossberg as Special Receiver, prepared and obtained an order from the Family Court of Jefferson County, West Virginia by which Schlossberg claimed authority to seize mail of Teton in Wyoming.

35. By the said order obtained from the Family Court of Jefferson County, West Virginia, Schlossberg claimed authority to seize assets in Wyoming belonging to Teton.

TETON MILLWORK SALES v. SCHLOSSBERG                COMPLAINT                PAGE 3

36. In January 2004, when he drafted and obtained the said order, Schlossberg knew the exact location and temporary residence of Michael Palencar and knowingly withheld that and other material facts to the Family Court of Jefferson County, West Virginia.

37. In January 2004, when he drafted and obtained the said order from the Family Court of Jefferson County, West Virginia without notice to Teton, Schlossberg had the specific intent to prevent Teton from exercising its rights and its opportunity to be heard by a court of competent jurisdiction with regard to the efficacy of the said order.

38. In January and February 2004, without authority or jurisdiction, and without notice to Michael Palencar or Teton, Schlossberg induced the United States Postmasters of Brunswick, Maryland, Terra Alta, West Virginia, and Laramie, Wyoming, to divert and forward the mail of Teton to Schlossberg's office in Hagerstown, Maryland.

39. The action of Schlossberg in inducing said postmasters to divert and forward mail to him was without judicial authority, and was taken outside the subject matter jurisdiction of the Family Court of Jefferson County, West Virginia, on whose authority Schlossberg purported to act.

40. In January 2004, without judicial authority from a court with subject matter jurisdiction, Schlossberg made false representations to third-parties and agents of Teton that Schlossberg had the requisite legal authority to compel those third parties to divulge and deliver to Schlossberg confidential and proprietary business and personal information belonging to Teton.

41. Without judicial authority, Schlossberg seized assets located in Wyoming and belonging to Teton.

42. After extensive litigation in the West Virginia divorce proceedings, by Order dated March 26, 2004, the support and equitable distribution issues were resolved between Michael Palencar and his spouse, with any and all claims against Schlossberg specifically preserved.

43. At all times relevant hereto, and at all times during the Michael Palencar Divorce Court proceedings in the Family Court of Jefferson County, West Virginia, Schlossberg knew that Teton was not the alter ego of Michael Palencar and that the Family Court of Jefferson County, West Virginia, had no jurisdiction over Teton.

44. At all times relevant hereto, and at all times during the Michael Palencar Divorce Court proceedings in West Virginia, Schlossberg had no evidence whatsoever by which to justify an effort to pierce the corporate veil of Teton.

45. Schlossberg never served Teton with process, never gave Teton notice that he was attempting to pierce the corporate veil of Teton, and never gave the corporation notice that he was attempting to seize the mail and assets of Teton.

TETON WILLWORK SALES v. SCHLOSSBERG         COMPLAINT         PAGE 4

46. Schlossberg never served Palencar or any of the other shareholders of Teton with process, never gave them notice that he was attempting to pierce the corporate veil of Teton, and never gave them notice that he was taking actions to seize the mail and assets of Teton.
47. Schlossberg never obtained a Wyoming court order or warrant authorizing the seizure or diversion of the mail belonging to Teton.
48. Schlossberg never obtained a Federal court order or warrant authorizing the seizure or diversion of mail belonging to Teton.
49. Schlossberg never obtained a Wyoming court order or warrant authorizing Schlossberg to receive, or for third-party agents to divulge to Schlossberg, confidential and proprietary business, corporate and personal records belonging to Teton.
50. Schlossberg never obtained a federal court order or warrant authorizing Schlossberg to receive, or for third-party agents to divulge to Schlossberg confidential and proprietary business, corporate and personal records belonging to Teton.
51. Schlossberg never obtained a Wyoming court order or warrant authorizing the seizure of assets belonging to Teton.
52. Schlossberg never obtained a federal court order or warrant authorizing the seizure of any assets belonging to Teton.
53. At all times relevant hereto, and at all times during the divorce proceedings in the Family Court of Jefferson County, West Virginia, Schlossberg knew that no Wyoming state or federal court had asserted or exercised personal jurisdiction over Teton, its shareholders, or any in rem jurisdiction over any Teton assets.
54. At no time did Schlossberg receive, or take necessary steps to obtain, ancillary jurisdiction in Wyoming over Teton, despite specific demands by one or more of the persons holding property of Teton.
55. At all times relevant hereto, and during January and February 2004, Schlossberg falsely represented to third-parties that he had legal authority to so act, and intentionally omitted the material facts that in order to exercise legal authority he was required to obtain ancillary jurisdiction in Wyoming and had failed to do so.
56. At all times relevant hereto, Schlossberg's actions alleged herein were carried out by him without judicial authority, and resulted from his own individual and non-judicial actions.

### COUNT ONE: ABUSE OF PROCESS

57. By this reference Plaintiff incorporates herein the allegations of paragraphs 1 through 56 of this Complaint as though set forth in their entirety.

TETON MILLWORK SALES v. SCHLOSSBERG     COMPLAINT     PAGE 5

58. On or about January 8, 2004, Schlossberg drafted and submitted to the West Virginia Divorce Court an ex-parte ORDER ESTABLISHING PENALTY SUM OF BOND OF TRUSTEE/SPECIAL RECEIVER AND GRANTING OTHER RELIEF [hereinafter "Order No. 1"].

59. On information and belief, Teton alleges that in order to obtain the orders described herein Schlossberg had to have made misrepresentations of fact, or knowingly failed to disclose material facts, to the Family Court of Jefferson County, West Virginia.

60. Order No. 1 was signed and entered by the West Virginia Court on January 8, 2004, and purported to vest Schlossberg with broad powers of a Trustee or Receiver to investigate and seize the assets and property of Michael Palencar.

61. Order No. 1 did not vest Schlossberg with any power to investigate or seize the assets and property of Teton.

62. Order No. 1 authorized and directed Schlossberg to obtain ancillary jurisdiction and relief from those State and Federal Courts that were outside the territorial jurisdiction of West Virginia prior to asserting or acting on the authority of the Family Court of Jefferson County, West Virginia.

63. Without judicial authority and jurisdiction, Schlossberg contacted Teton's agents in Laramie, Wyoming, on January 12, 13 and 14, 2004, and thereafter drafted and submitted to the Family Court of Jefferson County, West Virginia, another ex-parte AMENDED ORDER ESTABLISHING PENALTY SUM OF BOND OF TRUSTEE/SPECIAL RECEIVER AND GRANTING OTHER RELIEF ("Order No. 2").

64. Order No. 2, signed and entered by the West Virginia Court January 14, 2004, purported to vest Schlossberg with broad powers to investigate and seize assets within the jurisdiction of the West Virginia Court, but gave Schlossberg no authority to act outside West Virginia without obtaining competent jurisdiction.

65. Order No. 2 directed Schlossberg to obtain ancillary jurisdiction and relief from those State and Federal Courts outside the territorial jurisdiction of West Virginia prior to asserting judicial authority over any property in the State of Wyoming.

66. The only legal process for which Schlossberg could utilize Order No. 2 was to submit said order to Wyoming and Federal Courts of competent jurisdiction in seeking to obtain ancillary jurisdiction over Teton, and in seeking to obtain a Federal warrant or other Federal court order authorizing the interception and diversion of Teton's mail or the seizure of any property owned by Teton.

67. Schlossberg presented Order No. 2 to Teton's agents in Wyoming without the authority of any court, and falsely represented to said agents that the West Virginia Order independently entitled him to the receipt of Teton's property, mail and confidential business information.

TETON MILLWORK SALES - SCHLOSSBERG         COMPLAINT            PAGE 8

68. Schlossberg's use of Order No. 2 without jurisdiction and judicial authority in such manner was designed to effectuate an ulterior purpose for which it was not designed; specifically:

    (a) To illegally obtain Teton's property, mail and confidential information without notice, without requisite judicial authority, and without ancillary jurisdiction in Wyoming; and

    (b) To illegally obtain Teton's property, mail and confidential corporate information without notice, and without having obtained personal, original, ancillary or *in rem* jurisdiction over Teton, who Schlossberg knew was not a party to the Family Court of Jefferson County, West Virginia, proceedings and were not within the jurisdiction of that court.

69. Schlossberg's oral misrepresentations and omissions of material facts, and the manner in which he presented Order No. 1 and Order No. 2, were willful acts designed to misuse and abuse legal process in order to obtain Teton's property and mail without requisite judicial authority.

70. Schlossberg's use of Order No. 1 and Order No. 2 in such manner was in direct contravention of the legal and jurisdictional mandate of both Orders, and was not proper in the regular conduct of the law.

71. Schlossberg's use of Order No. 1 and Order No. 2 in such manner violated the right of Teton to be free from the abuse of absolute and arbitrary power as guaranteed by Article 1 § 7 of the Wyoming Constitution.

72. Schlossberg's use of Order No. 1 and Order No. 2 in such manner deprived Teton of the right to have a court of competent jurisdiction determine whether Wyoming would recognize the ancillary or personal jurisdiction of a West Virginia court of limited jurisdiction over property located and administered in the State of Wyoming, such that in abusing the process of law Schlossberg deprived Teton of the due process guaranteed to it by the 5th and 14th Amendments of the United States Constitution, and Article 1 § 6 of the Wyoming Constitution.

73. As a direct and proximate result of Schlossberg's abuse of process, Teton has suffered monetary damages in an amount to be proven at trial herein.

74. Schlossberg's knowing, intentional abuse of process was done with such malice and such willful and wanton disregard of the consequences that Schlossberg should be ordered to pay punitive and exemplary damages in such amount as will deter Schlossberg and others similarly situated from similar misconduct in the future.

**COUNT TWO: FRAUD**

75. By this reference Teton incorporates herein the allegations of paragraphs 1 through 74 of this Complaint as though set forth in their entirety.

TETON MILLWORK SALES v. SCHLOSSBERG                COMPLAINT                PAGE 7

76. Schlossberg made contact with Teton' agents and associates in January and February 2004, which agents included but were not limited to: First National Bank of Laramie, Wyoming; American Express Financial Advisors of Laramie, Wyoming; Tschacher Peterson & Co. of Laramie, Wyoming; Steve Martindale of Laramie, Wyoming; Ferris Baker Watts of Winchester, Virginia; and USI Insurance Services of Glen Allen, Virginia.

77. Schlossberg also made contact with postmaster Janet Downey of the United States Postal Service in Laramie, Wyoming.

78. Schlossberg made the following specific false factual representations to one or more of Teton's said agents and associates:

   (a) That Schlossberg was a court-appointed trustee or receiver acting under the color and authority of the law;

   (b) That Schlossberg was in a position of judicial authority over Teton;

   (c) That Schlossberg was vested with title to all the assets, property, mail and confidential business and corporate information of Teton.

79. Schlossberg also falsely represented that Teton's said agents and associates were forbidden from accepting instructions from Teton, and that those agents would be subject to financial penalties should they do so.

80. At the time Schlossberg made the aforesaid false representations, he knew he had no jurisdiction to exert any judicial authority in Wyoming.

81. At the time Schlossberg made the aforesaid false representations, he knew he had no judicial authorization to make such representations.

82. Schlossberg's statements of his authority, and of the West Virginia Court's jurisdiction over the said agents of Teton, were material misrepresentations.

83. When Schlossberg made said statements of his authority, and of the West Virginia Court's jurisdiction over the said individuals, he knew the statements were false.

84. Schlossberg intentionally omitted material information as to his own authority, and as to the West Virginia Court's authority over Teton in the State of Wyoming.

85. Schlossberg's said knowingly false and material misrepresentations and omissions of material facts were non-judicial acts engaged in by Schlossberg individually.

86. At the time Schlossberg made the aforesaid false representations and omissions, he knew he was required to obtain ancillary jurisdiction and appropriate federal court orders prior to obtaining any property, mail or confidential and proprietary business and corporate information of Teton.

87. Schlossberg did not attempt to obtain ancillary jurisdiction and appropriate federal court orders prior for seizure of Teton' property, mail or confidential and proprietary business and corporate information, because Schlossberg knew that he would be

TETON MILLWORK SALES v. SCHLOSSBERG          COMPLAINT          PAGE 8

unable to obtain jurisdiction for such actions from a Wyoming court of competent jurisdiction.

88. In addition to his knowingly false misrepresentations and omissions of material fact, Schlossberg presented said agents and entities with documentation and orders that were incomplete and misleading.

89. Schlossberg knew or believed that his presentation of the incomplete documentation, and intentional omission of material facts without further supplementation or qualification would be materially misleading.

90. Schlossberg expected the said individuals, entities and agents to rely upon his false representations and omissions and further expected that in reliance thereon they would be induced to: (a) believe Schlossberg had judicial authority to act when he in fact was acting without such authority; (b) disclose confidential information of Teton (c) transfer to Schlossberg assets and property in their possession or belonging to Teton; (d) divert the Teton mail to Schlossberg; (e) disregard Teton's objections; (f) and engage in those actions without first notifying Teton of Schlossberg's directives.

91. In direct reliance on Schlossberg's false representations and omissions, the said individuals, entities, and agents provided Schlossberg confidential and proprietary information of Teton, and transferred Teton's mail and assets to Schlossberg on or about the dates specified below:

  a. 1.28.04; $27,050.19 (Ferris, Baker, Wstts);
  b. 2.06.04; $33,190.33 (American Express Financial Advisors).

92. As a direct and proximate result of Schlossberg's fraudulent misrepresentations and omissions, Teton suffered monetary damages in an amount to be proven at trial herein, including those amounts Schlossberg retained and was paid for those actions he performed in Wyoming and other states without judicial authorization.

93. Schlossberg's knowingly false, fraudulent and intentional misrepresentations and omissions were made with such wilful and wanton disregard of the consequences that Schlossberg should be ordered to pay punitive and exemplary damages in such amount as will deter Schlossberg and others similarly situated from similar misconduct in the future.

WHEREFORE Plaintiff TETON MILLWORK SALES demands judgment as follows:

A. For award of compensatory damages against Defendant ROGER SCHLOSSBERG in such amount as will be proved at trial herein.

B. For award of exemplary and punitive damages against Defendant ROGER SCHLOSSBERG in such amount as will deter said Defendant and others similarly situated from similar misconduct in the future.

TETON MILLWORK SALES v. SCHLOSSBERG        COMPLAINT        PAGE 9

C.  For Plaintiff' costs of suit herein and for award of such other and further relief as the Court deems Plaintiff entitled, the premises considered.

Dated this 8 day of December 2006.

ARON and HENNIG, LLP
Attorneys for Plaintiff

By: _____
C. M. Aron
Galen Woelk

201 The Sandpiper Building
1492 North 5th Street, Suite 201
Laramie, WY 82072
Telephone: (307) 742-6645

TETON MILLWORK SALES v. SCHLORSBERG          COMPLAINT          PAGE 19