C.M. Aron
Galen B. Woelk
ARON and HENNIG
1472 North Fifth Street, Ste. 201
Laramie, WY  82072
Telephone: (307) 742-6645
Facsimile:  (307) 742-7766
ATTORNEYS FOR PLAINTIFF

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| TETON MILLWORK SALES, | ) | |
| a Wyoming corporation | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 07-CV-014J |
| | ) | |
| ROGER SCHLOSSBERG, | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S BRIEF IN OPPOSITION
## TO DEFENDANTS' MOTION TO DISMISS

**A.**      **Introduction**.  This is a case of abuse of process and fraud committed in

Wyoming by Defendant Roger Schlossberg ["Schlossberg"].  The claims are made against

Schlossberg personally, based on his actions taken without legal authority.  Schlossberg

moves to dismiss because he was appointed as a receiver in a divorce action in a West

Virginia court of limited jurisdiction.  Michael Palencar, one of the divorcing spouses, is a

minority shareholder of Plaintiff Teton Millwork Sales, a Wyoming corporation ["Teton"]
which was not a party to the West Virginia divorce action.  Teton was given no notice of the
divorce action, was not served with process of the West Virginia case and did not participate
in the proceedings.  Teton's causes of action in Wyoming are based entirely on Schlossberg's
actions in Wyoming.  Teton's Complaint does not arise from Palencar's West Virginia
divorce, or from Schlossberg's actions in the State of West Virginia.  Schlossberg admits he
had no authority to act in Wyoming unless he first obtained proper jurisdiction:

> Schlossberg was to act outside the State of West Virginia and was authorized
> and directed to seek and obtain ancillary jurisdiction as may otherwise be
> available, and as may appear appropriate.              Brief at p. 5.

The West Virginia court ordered Schlossberg to obtain ancillary jurisdiction in any
state outside of West Virginia.  Schlossberg never obtained that authority.  Schlossberg also
misrepresented his authority by providing Wyoming residents with falsified copies of the
West Virginia court's orders.  Teton does not challenge the authority of the West Virginia
court, or Schlossberg's receivership to act in West Virginia or those states he obtained proper
jurisdiction. The West Virginia court could affect Teton's Wyoming assets only by obtaining
ancillary jurisdiction in Wyoming.  Schlossberg did not satisfy that basic requirement.  He
acted individually, and outside the purview of the West Virginia Court's orders.

Schlossberg moves to dismiss on the following grounds: (a) Rule 12(b)(1), alleging
lack of jurisdiction over the subject matter, a theory premised upon the West Virginia divorce

court having "retained" jurisdiction over Michael Palencar's divorce; (b) Rule 12(b)(2), claiming Wyoming lacks *in personam* jurisdiction over Schlossberg; (c) Rule 12(b)(3), claiming improper venue; and (d) Rule 12(b)(6), claiming Teton's claims are barred by Schlossberg's affirmative statute of limitation and immunity defenses.

1.    This Court has *in personam* jurisdiction because Schlossberg purposefully directed his activities in Wyoming to cause effects on Wyoming residents.

2.    Schlossberg's assertion of the West Virginia statute of limitations fails, because Schlossberg's misconduct in Wyoming is governed by the Wyoming statute of limitations.

3.    Schlossberg is not immune because the West Virginia divorce court which appointed Schlossberg as receiver had no jurisdiction in Wyoming, and Schlossberg's misconduct in Wyoming was outside the scope, and in violation of, the West Virginia order.

4.    Schlossberg's attack on subject matter jurisdiction is unsupported by any legal authority.    The West Virginia court order "retaining" jurisdiction over the divorce parties does not forbid a Wyoming court from exercising jurisdiction over actions in Wyoming.

Schlossberg's Rule 12(b)(3) motion does not comply with USDCLR 7.1(b)(2)(A) since there is no "statement of the arguments and authorities in support of the motion."

**B.    Facts.**  Teton's claims arise from Schlossberg's actions in Wyoming, taken without notice to Teton [Complaint ¶¶ 38, 45, 46] and without a Wyoming court order or warrant authorizing the same [Complaint ¶¶ 47-52, 77].  Those actions include:

1.    Schlossberg contacting Teton's agents and associates in Laramie, Wyoming, including but not limited to: First National Bank of Laramie; American Express Financial Advisors; Mader Tschacher Peterson & Co.; Mr. Steve Martindale. [Complaint ¶76.]

2.    Schlossberg making misrepresentations to those agents and associates of Teton: that he was acting under color and authority of the law; that he had authority over Teton; that he was vested with title to all the Wyoming assets, property, mail and confidential business and corporate information of Teton [Complaint ¶¶ 40, 64-67, 78].

3.    Schlossberg contacting the U.S.P.S. postmaster in Laramie [Complaint ¶77].

4.    Schlossberg seizing Teton's Wyoming mail [Complaint ¶¶ 38 & 39].

5.    Schlossberg seizing Teton's Wyoming assets, property, mail and confidential business and corporate information [Complaint ¶¶ 40, 41].

6.    Schlossberg inducing third-parties and agents of Teton to divulge and deliver confidential and proprietary business and personal information of Teton [Complaint ¶78].

7.    Schlossberg informing Teton's agents and associates they could not accept instructions from Teton, and would be subject to penalties if they did so [Complaint ¶79].

*Schlossberg has Admitted the Jurisdictional Facts.*  At ¶5 of his affidavit, Schlossberg admitted his extensive contact with Wyoming and the consequences of his acts in Wyoming:

•    Schlossberg "acted to locate and husband the assets of Mr. Palencar."

•    "[By] those efforts, [he] learned of ... assets located in the State of Wyoming.

- Schlossberg "communicated via telephone, fax and United States mail with various individuals and financial institutions" in Wyoming, as well as the Laramie postmaster.

- "In those communications [he] advised of his court appointment and authority and provided to such persons copies of appropriate Court Orders evidencing his said authority."  As discussed below, and alleged [Complaint ¶ 84], Schlossberg provided falsified copies of the orders to those persons.

- "Said efforts ultimately resulted in the turnover to [Schlossberg] of certain assets."

- Schlossberg communicated with professional persons in Wyoming about his efforts with respect to such property located in Wyoming."  As alleged in the Complaint, and a disputed issue of material fact herein, the admitted communications and seizures by Schlossberg were assets of Teton, not Palencar.

In his Brief at p. 15, Schlossberg admits it was "of no consequence" to him where the assets he seized were located.  This admission evidences Schlossberg's lack of concern as to the *consequences* of his actions in Wyoming, and the effect those *consequences* would have on Wyoming residents and corporations.

Schlossberg disregarded the West Virginia court's directive, and did not obtain ancillary jurisdiction in Wyoming over Teton or any Wyoming property.  Schlossberg's actions were taken without judicial authority and were his own individual, non-judicial actions. [Complaint at ¶ 56].

*Conversion of Rule 12(b)(6) Motion to Motion for Summary Judgment.*

Schlossberg asserts a "Rule 12(b)" motion based on the West Virginia statute of limitations [Brief at p. 12], but does not specify whether it is brought pursuant to subparagraph (1) or (6).  Schlossberg properly references the facts in the Complaint, but also refers to his affidavit, a document outside the pleadings, but with which he claims he was "[a]cting pursuant to the express authority granted by the Family Court."  [Affidavit at ¶ 5.] If that is an assertion of fact, it is disputed, warranting denial of a summary judgment even if the Court did consider the affidavit and convert to a summary judgment motion. Schlossberg's statement is probably not significant with regard to the motion based on statute of limitations, but it is central to Schlossberg's motion based on a claim of immunity.

C.     **Argument**

1.     *In Personam Jurisdiction.*

*Determination of Jurisdictional Facts.*  To the extent Schlossberg's motions rely on Rule 12(b)(1) and Rule 12(b)(2), F.R.C.P., the Court has authority to conduct evidentiary hearings or compel the parties to take such actions through discovery as the Court deems appropriate to establish the facts upon which a decision on jurisdiction may be decided. *FDIC v. Oaklawn Apartments,* 959 F.2d 170 (10th Cir.1992).  Should the Court entertain a Rule 12(b)(1) motion only on documentary evidence, the plaintiff need only demonstrate a prima facie showing of personal jurisdiction to defeat the motion.  *Benton v. Cameco Corp.,*

375 F.3d 1070, 1074 (10th Cir.2004); *see also, Archangel Diamond Corp. v. Lukoil*,123 P.3d 1187, 1192 (Colo.2005), as to the Colorado procedure, relying on 10th Circuit holdings.

*Standard to be Applied – In Personam Jurisdiction.*   Wyoming provides for long arm jurisdiction on any basis not inconsistent with the Wyoming or United States constitutions. W.S. 5-1-107(a) (2005),   *Markby v. St. Anthony Hosp. Sys.,* 647 P.2d 1068, 1070 (Wyo.1982).  In his Brief at pp. 12-16, Schlossberg cites 10th Circuit decisions which set forth the standard in the abstract, but Schlossberg does not apply them to his own conduct. When Schlossberg's activities are scrutinized under the Wyoming Supreme Court tests, as well as the federal standards on which they are based, there is a sufficient basis for Wyoming state and federal courts to assert *in personam* jurisdiction over Schlossberg:  He purposefully availed himself of the privilege of acting in Wyoming and caused important consequences in the state; the Complaint arises directly and entirely from Schlossberg's activities in Wyoming and their consequences; Schlossberg's activities and their consequences have a substantial enough connection with Wyoming to make the exercise of jurisdiction reasonable.

Schlossberg could anticipate being haled into court in Wyoming when *his appointing court ordered him to seek the permission and jurisdiction of Wyoming courts* before acting.

<u>*Minimum Contacts.*</u>  Teton does not claim Wyoming has general jurisdiction over Schlossberg, but specific jurisdiction based on his acts and their Wyoming consequences. Schlossberg admits the acts, but claims he acted under the authority of a West Virginia court.

*The Wyoming Three-Part Test.*  Wyoming recognizes a "rather large constellation" of analytical tools are available to courts for use in resolving issues relating to personal jurisdiction.  *Cheyenne Publishing, LLC v. Starostka* 94 P.3d 463, 470-473 (Wyo.2004), *citing,* 4 Wright & Miller, *Federal Practice and Procedure: Civil 3d* §§ 1063-1068 at 325-591 (2002 and Pocket Part 2003).  In *O'Bryan v. McDonald,* 952 P.2d 636 (Wyo.1998) the Wyoming Court organized the requirements into a three-part test for jurisdiction based on a single act, rather than general jurisdiction based on "continuous and systematic" contact:

> 1) the defendant must purposefully avail himself of the privilege of acting in the forum state or of causing important consequences in that state, 2) the cause of action must arise from the consequences in the forum state of the defendant's activities, and 3) the activities of the defendant or the consequences of those activities must have a substantial enough connection with the forum state to make the exercise of jurisdiction reasonable.
>
> > *O'Bryan,* 952 P.2d at 639 (citing *Amoco Prod. Co. v. EM Nominee Partnership Co.,* 886 P.2d 265, 267 (Wyo.1994)).

The 10th Circuit emphasizes that  the question of "[w]hether a non-resident defendant has the requisite minimum contacts with the forum state to establish in personam jurisdiction must be decided on the particular facts of each case." *Kuenzle v. HTM Sport-Und Freizeitgerate AG,* 102 F.3d 453, 456 (10th Cir.1996). A 2-pronged test is applied:  (1) the defendant purposefully directed activities toward the forum; and (2) the Complaint is based on activities that "arise out of or relate to" the defendant's contacts with the forum state. *Kuenzle, supra,* 102 F.3d at 455, citing *Burger King v. Rudzewicz,* 471 U.S. 462. 472 (1985).

The analysis is based on whether the defendant "purposefully directed" relevant activities toward forum residents.  The general rule derives from numerous Supreme Court decisions, and has been summarized as follows:

> "A defendant need not physically enter the state in order to be subject to jurisdiction.  Where the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries which arise out of or relate to those activities, jurisdiction is proper."
>
> 21 C.J.S. COURTS § 40, at p. 56.

*Burger King* articulated parameters for personal jurisdiction.  Burger King franchisees had contracted in Michigan for a restaurant there.  The application was sent to Burger King offices in Florida; the contract specified Florida law.  Burger King sued the franchisees in Florida federal court.  The District Court found jurisdiction; the 11th Circuit Court of Appeals reversed.  The U.S. Supreme Court reversed the 11th Circuit and upheld the jurisdiction of the Florida district court, holding that **physical entry into the forum was not required**.  It was sufficient that defendant "purposefully directed" relevant activities toward forum residents. The documentary contacts and actions in that case were far less than Schlossberg's contacts with Wyoming residents and "professionals";  Schlossberg's falsification of his documentary authority and transmission of the same to Wyoming  [Complaint at ¶¶ 40, 55, 69, 78]; Schlossberg's interference with mail in Wyoming; Schlossberg's direct contacts with Wyoming residents in attempting to induce them to turn over assets and mail; and Schlossberg's additional attempts to cause actions by Wyoming residents.

The Wyoming Supreme Court has articulated the test in substantially the same terms, with perhaps greater focus on the "reasonableness" of exercising jurisdiction rather than on determining whether it is "fair." *Amoco Production Co. v. EM Nominee Partnership Co.*, 886 P.2d 265 (Wyo.1994). The Wyoming test is at least as demanding as the 10th Circuit requirements. Each requires a careful analysis of exactly what Schlossberg did in Wyoming.

> The "purposeful availment" is . . . meant to ensure "'that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts.' " *O'Bryan,* 952 P.2d at 639 (quoting *Burger King*). Unless the purposeful availment requirement is satisfied, the court will not have personal jurisdiction over the nonresident "no matter how strong the interest of the plaintiff or the forum state may be in having the suit adjudicated there." *O'Bryan,* 952 P.2d at 639 (citing *World-Wide Volkswagen* [citation omitted] 1 Robert C. Casad, Jurisdiction in Civil Actions § 2.05 (2d ed.1991).
> *Goodwin v. Hall,* 957 P.2d 1299, 1301-2 (Wyo.1998).

That Schlossberg purposefully availed himself of the privilege of acting in Wyoming and caused important consequences here is illustrated by those facts referenced above, and in Schlossberg's affidavit wherein he admits he communicated with professionals in Wyoming. Schlossberg's contact with individuals and entities was for the purpose of seizing assets. Schlossberg concedes his efforts in Wyoming resulted in Wyoming assets being turned over to him in West Virginia. Schlossberg's misrepresentations to those Wyoming institutions and residents, as alleged, would further support the exercise of personal jurisdiction over Schlossberg in the state he purposefully availed himself.

A situation where a court does not have jurisdiction is far different than the facts here, illustrated by *Cheyenne Publishing, LLC v. Starostka,* 94 P.3d 463 (Wyo.2004). In *Starostka* the Wyoming plaintiff sued a Nebraska resident who had signed a contract to advertise in an Artist's Guide. The Wyoming *plaintiff had solicited Starostka* with multiple telephone calls, was rejected, then followed up by *visiting Starostka at her home in Nebraska*. Starostka *never contacted anyone in Wyoming* except to call plaintiff's toll-free number to discuss problems with the contract, and returned plaintiff's phone calls originated from Arizona. Starostka also contacted the Wyoming Attorney General's office to register a complaint. She had *no communications with anyone else in Wyoming* and *no other contacts* with the State of Wyoming. The Wyoming Supreme Court held that the complaint did not assert that Starostka had minimum contacts and the contacts were too attenuated to justify exercise of personal jurisdiction. To exercise jurisdiction under those circumstances would be offensive to traditional notions of "substantial justice and fair play." The contrast with Schlossberg is dramatic, not on abstract legal theory, but on actual contacts with Wyoming.

*Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.*, 205 F.3d 1244 (10th Cir.2000) illustrates the factual analysis required. The District Court for the Western District of Oklahoma dismissed for lack of *in personam* jurisdiction. The 10th Circuit reversed, finding jurisdiction where a defendant, after being told of complaints about the unauthorized use of plaintiff's mail server, knew it was routing traffic and e-mail to plaintiff's server. Defendant

claimed it conducted no business in Oklahoma and that it took steps to halt the flow of

e-mail, and that it finally terminated its customers' service.  The 10th Circuit concluded that

the defendant purposefully directed its conduct toward Oklahoma after it had notice of the

problem, despite having the technological ability to prevent the access immediately.  The

defendant may have had a legitimate business reasons for its conduct, but that did not negate

the fact that defendant purposefully availed itself of the Oklahoma server.  In *Intercon*, the

Court of Appeals cited computer-related cases to illustrate the factual basis for the analysis,

including use of a computer or network service located in a particular state, entering into a

contract to distribute software, and consciously transmitting electronic messages into the

forum state.  *Intercon*, *supra*, 205 F.3d at 1248.

Reasonableness of jurisdiction is illustrated by two libel cases.  In *Keeton v. Hustler*

*Magazine,* 465 U.S. 770 (1984), plaintiff Keeton was not a forum resident where the choice

of forum was pretextually chosen for purposes of the statute of limitations.  Keeton's only

connection to the state was the circulation there of magazines by the company she worked

for.  Defendant Hustler Magazine circulated magazines in New Hampshire, but there was

probably no significant damage to plaintiff's reputation there.  The district court dismissed

for lack of personal jurisdiction over Hustler.  The First Circuit Court of Appeals affirmed.

The U.S. Supreme Court reversed, and found jurisdiction proper in New Hampshire,

even though other states -- particularly plaintiff's domicile -- had a greater interest in the

case.  The Supreme Court found several New Hampshire state interests – which were far less compelling than the Wyoming interests here – significant, including New Hampshire razor-thin interest in protecting its resident Hustler Magazine readers.  The Court opined that "[f]alse statements of fact harm both the subject of the falsehood *and* the readers of the statement"  465 U.S. at 776 (emphasis in original).  The observation is true, but *as a state interest to sustain personal jurisdiction* the sensitivity to truth in the tender hearts of Hustler Magazine readers would seem to be far less significant than Wyoming's interest in protecting its own citizens against abuse of legal process, abuse of non-existent legal authority by a non-resident and fraudulent seizure of property and mail located in Wyoming.

Schlossberg's authority in West Virginia does not affect the ability of a Wyoming court to exercise jurisdiction based on his non-authorized and fraudulent actions.  Only Wyoming can assert jurisdiction over Schlossberg for his actions in Wyoming.  Schlossberg's acts touch no other jurisdiction, and the West Virginia divorce court of limited jurisdiction has no jurisdiction over a Wyoming corporation, over Teton's Wyoming assets, property and mail, over Wyoming residents, or over any acts in Wyoming.  If Schlossberg had authority to act in West Virginia, it is irrelevant to Wyoming.  West Virginia jurisdiction over a Teton shareholder is unrelated to the question of *in personam* jurisdiction over Teton.

In *Calder v. Jones,* 465 U.S. 783 (1984) plaintiff Jones brought suit in California against the National Enquirer and against the author and editor, both residents of Florida.

A unanimous Supreme Court held that the article authored and edited in Florida had effects in California by causing injury to a California resident's reputation.  Defendants compared themselves to welders on a product later shipped to California by the welder's employer. Arguing that California should not have jurisdiction because the welder was not the one who chose to market the product there.  The Court decided the conduct of the hypothetical welder was directed at the forum as a specific target.

> "[Their] analogy does not wash.  Whatever the status of their hypothetical welder, [the editor and author] are not charged with mere untargeted negligence.  Rather, their intentional, and allegedly tortious, actions were precisely aimed at California."                465 U.S. at 789.

Schlossberg attempts to hide behind the West Virginia court, just as the "welder" - proposed hiding behind its "employer." The same analysis should apply to Schlossberg since the same allegations exist, i.e., Schlossberg's "intentional, and allegedly tortious, actions were precisely aimed at" Wyoming.

The 10th Circuit's analysis of *in personam* jurisdiction is also illustrated by *Benton v. Cameco Corp.,* 375 F.3d 1070, 1076 - 1080 (10th Cir.2004).  After finding minimum contacts, the Court systematically evaluated "whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice," by inquiring whether exercise of personal jurisdiction over a defendant with minimum contacts is 'reasonable' in light of the circumstances surrounding the case." [*quoting OMI Holdings, Inc.*

*v. Royal Ins. Co. of Canada,* 149 F.3d 1086, 1091 (10th Cir.1998)].  Reasonableness is based on five factors: (a) burden on the defendant, (b) forum state's interest in resolving the dispute, (c) plaintiff's interest in obtaining effective relief, (d) judicial system's interest in obtaining the most efficient resolution of controversies, and (e) interests of the states in furthering fundamental social policies.  *OMI,* 149 F.3d at 1095.  If the minimum contacts are weak, a lesser amount of unreasonableness will defeat jurisdiction; a strong showing of reasonableness is sufficient with only borderline minimum contacts. *Benton, supra,* 375 F.3d at 1078-1079.

(a)   <u>Burden on Schlossberg of Litigating in Wyoming.</u>  There is a burden on Schlossberg to litigate in Wyoming.  In practical terms that burden is less than it would be in West Virginia, because ***all*** the witnesses to Schlossberg's Wyoming conduct are in Wyoming.  Whether for depositions or for trial, Schlossberg could not defend without coming to Wyoming.

(b) <u>Wyoming's Interest in Adjudicating the Dispute.</u>  As in *Benton*, states always have an important interest in providing a forum for residents to seek redress for injuries caused by out-of-state actors, and also has an interest where the dispute requires application of its laws.

(c)   <u>Teton's Interest in Convenient and Effective Relief.</u>  Teton is a Wyoming corporation.  Its assets and mail were seized in Wyoming.  There is no other forum where Teton may receive convenient and effective relief; surely not from the divorce court of its shareholder.

(d) <u>Interstate Judicial System's Interest in Efficient Resolution.</u>  Is the forum state the most efficient place to litigate the case?  Here all the witnesses are in Wyoming, the wrong underlying the lawsuit occurred in Wyoming, and Wyoming law governs the case.

(e) <u>States' Interest in Furthering Fundamental Substantive Social Policies.</u>  The social policies of Wyoming relate to its concern for abuse of its citizens and wrongful seizure of its citizens' assets.  No other state has any interest at all in those citizens or assets.

In *Pro Axess, Inc. v. Orlux Distribution, Inc.,* 428 F.3d 1270 (10th Cir.2005), a Utah distributor sued a French customer on a contract. The 10th Circuit held that the customer had purposefully availed itself of conducting activities in Utah, and Utah's jurisdiction did not offend fair play and substantial justice.  The important facts in upholding jurisdiction were that the French customer solicited the Utah company's assistance, and thereby "purposefully avail[ed] itself of the privilege of conducting activities within the forum State." *Citing Hanson v. Denckla*, 357 U.S. at 253, 78 S.Ct. 1228.  Like the defendant in *Pro Axess,* Schlossberg sought out and conducted activities with Wyoming residents whom Schlossberg knew to be located in Wyoming.

Schlossberg relies on *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292 (10th Cir.1999).  *Soma* is distinguishable because *Soma* involved a *plaintiff going outside its home state to initiate contact with the defendant.*  That is not what happened here.

2.      **Immunity.**

*Determination of Facts.*  Schlossberg invokes Rule 12(b)(6), F.R.C.P., claiming he is immune from suit [Defendant's Brief at pp. 7-10].  Schlossberg references voluminous materials from West Virginia court actions and a November 2004 court order, all outside the pleadings.  Should the Court determine it appropriate to consider those materials outside the pleadings, the Court should convert the Rule 12(b)(6) motion to one for summary judgment.

*Standard to be Applied.*  The court will dismiss for failure to state a claim only when the plaintiff can prove no set of facts in support of the theory of recovery that would entitle him or her to relief. *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Maher v. Durango Metals, Inc.,* 144 F.3d 1302, 1304 (10th Cir.1998), or when an issue of law is dispositive. *Neitzke v. Williams,* 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).  The issue in resolving a motion such as this is not whether the plaintiff will ultimately prevail, but whether he or she is entitled to offer evidence to support the claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

*Immunity Covers Only Acts Authorized by a Court Order.*  In regard to Judge Wertman's acts, *not the acts of Schlossberg,* the West Virginia appeals court found that the Family Court judge's acts were "judicial."  That conclusion is not disputed here.  Teton concedes that ***within its jurisdiction*** the acts of the Family Court were judicial and the judge was immune from suit.

Schlossberg provides a lengthy quote from *Valdez v. City and County of Denver,* 878 F.2d 1285 (10th Cir.1989) [Brief p. 8]. In *Valdez,* a spectator held in contempt by a trial court brought a civil rights suit against officers who jailed him pursuant to the judge's order. The U.S. District Court for Colorado denied the officers' motion for summary judgment on ground of absolute quasi-judicial immunity. The 10th Circuit reversed and held that the an officer charged with duty of executing a **facially valid court** order is immune from liability. The holding means that immunity turns on the execution of a valid court order. Here, the West Virginia court's order did not permit the conduct of Schlossberg, without obtaining jurisdiction. Schlossberg was acting outside the order, and has no protection from it.

The *Valdez* case cited *Coverdell v. Department of Social and Health Services, State of Wash.,* 834 F.2d 758 (9th Cir.1987), where a mother whose parental rights were terminated brought suit against the social worker for denial of equal protection. The 9th Circuit upheld dismissal on the holding that the social worker was immune from liability for "seeking, obtaining, and executing an ex parte court order" directing the child be seized from hospital and placed in temporary shelter care. As in *Valdez,* the immunity existed because the defendant there, unlike Schlossberg, did what the order directed. The decision cited holdings that define the standard: if a person "faithfully execute[s] valid court orders" he is immune from a civil rights claim "for damages in civil rights actions challenging conduct authorized by the order." *Coverdell,* 834 F.2d 758, 764 -765. The decision cited cases upholding

immunity for a sheriff who *acted pursuant to official court order*, for those *who carry out the orders of judges,* and for a receiver who – unlike the claims against Schlossberg – *faithfully and carefully executes a court order.*  The claims against Schlossberg are also distinguishable from *T & W Inv. Co., Inc. v. Kurtz,* 588 F.2d 801, 802 (10th Cir.1978), where the 10th Circuit found immunity from suit under the Civil Rights Act for a receiver, " where every action taken by receiver and objected to in suit was known to and approved by state court judge supervising receiver" and the "corporate plaintiff . . . had an opportunity to and did object throughout state court proceedings."

 *Receiver Not Immune for Illegal Actions Outside Authority of the Appointing Order*.

 A receiver is not immune for illegal acts outside his authority, as in the case of *Investors Insurance Company of America v. Gorelick,* 108 Misc.2d 353, 441 N.Y.S.2d 151 (S.Ct.N.Y.1981), stating that a receiver, "acts at his peril if his actions find no basis . . . in the appointing order," *quoting People v. Eisenberg*, 100 Misc.2d 29, 30, 420 N.Y.S.2d 962 (N.Y. App1979).   The court cited a case in which a receiver was authorized by order of appointment to insure premises against fire and pay the insurance premiums.

> However, if the plaintiffs' claims against the Receiver are occasioned by acts or omissions outside the purview of the court's orders to the Receiver, then the receiver may be "personally, as distinguished from officially, responsible in contract", and then also "a suit against him personally would be justified" 108 Misc.2d 353*, 355, quoting 149 Clinton Ave. No. v. Grassi*, 51 A.D.2d 502, 507, 382 N.Y.S.2d 185.

The appellate court upheld denial of motion to dismiss for immunity of receiver because it was a question of fact for trial as whether the receiver's acts were authorized, and whether the receiver could be held liable to answer officially and/or individually for damages arising from unauthorized acts.   Plaintiff contended the receiver's appointing orders authorized procurement only of fire insurance, so securing other policies was beyond the orders.  Like extra-territorial jurisdiction for Schlossberg, the appointing order provided for the Receiver to obtain proper authority to act.

The appointing order did not authorize the acts alleged, so "the plaintiff was free to commence this action, . . . against the defendant, in his individual capacity, to recover" the damages at issue. *Investors Insurance Company of America v. Gorelick*, 108 Misc.2d 353, 355-356, 441 N.Y.S.2d 151, 152-153 (S.Ct.N.Y.1981)

Another New York case on point is *City Partners, Ltd. v. Jamaica Sav. Bank*, 454 F.Supp. 1269 (E.D.N.Y.1978), where the court concluded that the receiver was not immune from liability under the Civil Rights Act or New York law.  The court held that if the receiver "had simply adhered to the order appointing him" he would have enjoyed immunity as a court-appointed officer doing no more and no less than carry out an *order valid on its face* and issued by *a court having jurisdiction*.

> But here it is alleged that Simone did not confine himself to the matters committed to him by the order, that is, to the rents from the Alley Apartments, but undertook to act with respect to properties wholly outside both the

mortgage and the order appointing him.  New York courts have recognized the personal liability of a receiver for "acts or omissions outside the purview of the court's orders to the Receiver." [*Citing Clinton, supra.*] . . . Thus, for example, a receiver may be held liable in conversion for holding property not subject to the receivership.  *Fallon v. Egberts Woolen-Mill Co.*, 56 App.Div. 585, 67 N.Y.S. 347 (3d Dept. 1900).

> *City Partners, Ltd.*, 454 F.Supp. at 1276.

**4.      Subject Matter Jurisdiction**.

a.      *Determination of Facts.*  This Court has held that if a defendant attacks the sufficiency of the complaint, the Court will accept the plaintiff's allegations as true. *Lorenzen v. U.S,*, 236 F.R.D. 553, 557 (D.Wyo.2006) *citing Cal. Cas. & Fire Ins. Co. v. Brinkman,* 50 F.Supp.2d 1157, 1161 (D.Wyo.1999).  If the attack is *factual,* the Court may consider documents beyond the pleadings to resolve jurisdictional facts without converting the 12(b)(6) motion into one for summary adjudication under Rule 56. *Davis ex rel. Davis v. United States,* 343 F.3d 1282, 1295 (10th Cir.2003).

b.      *The West Virginia Order is not Entitled to Full Faith and Credit.*

Based on the Full Faith and Credit Clause of the U.S. Constitution and 28 U.S.C. §1738, Schlossberg contends this Court lacks subject matter jurisdiction [Brief pp. 16 & 17]. Schlossberg's motion claims extra-territorial effect for an order entered in the Jefferson County, West Virginia, Family Court on May 7, 2004, in Palencar's divorce.  The order was not filed in Wyoming as a foreign judgment pursuant to the applicable Wyoming statute.

The West Virginia Family Court's order in the divorce is entitled "Order Regarding Special Receiver/Trustee."  The West Virginia Family Court expressly stated that the order was based on that court's approval of a written *settlement agreement* of the parties, Mary Palencar and Michael Palencar.  Teton was not a party to the divorce or the settlement agreement.  **When it entered the order, the West Virginia court <u>had not exercised jurisdiction</u> in any way, so there was none to "retain."**  The West Virginia court stated that it "finds and does hereby ORDER and ADJUDGE" [emphasis supplied]:

> 3.  ORDERED that jurisdiction is hereby **retained** by this Court over any and all claims asserted by either party or **by any person or entity** arising from or related to the alleged performance or non-performance by Roger Schlossberg **of his duties as Trustee or as Special Receiver in this action**.

Schlossberg's subject matter jurisdiction motion is based on the effect of that single statement in the West Virginia court's order, not on a challenge to the facts in the Complaint herein.  Schlossberg has admitted the jurisdictional facts, so this Court should accept Teton's allegations as true for purposes of the Rule 12(b)(1) motion.  Teton does not sue Schlossberg for his duties as receiver, but for acts outside those duties.  The facts in Teton's Complaint allege that the West Virginia Family Court neither had nor exercised jurisdiction over Teton:

> 14.    Teton was not a party to the said Michael Palencar Divorce action . . .
>
> 15.    The [West Virginia court] is a court of limited jurisdiction.
>
> 16.    During the course of the Michael Palencar Divorce proceedings, Schlossberg was appointed as "Trustee" and subsequently as "Special Receiver" by the Family Court of Jefferson County, West Virginia.

17.   To the extent Schlossberg had any authority over property or proceedings in the State of West Virginia, Schlossberg's power to act extended geographically and substantively no further than the subject matter jurisdiction of the Family Court of Jefferson County, West Virginia, by which Schlossberg was appointed, and such other ancillary jurisdiction as he may have obtained . . .

18.   The Family Court of Jefferson County, West Virginia, does not have, and at all times relevant hereto did not have, subject matter jurisdiction over the actions of Defendants in the State of Wyoming.

19.   At no time relevant hereto was Teton before the Family Court of Jefferson County, West Virginia.

20.   At no time relevant hereto did the Family Court of Jefferson County, West Virginia, assert or have jurisdiction over any asset of Teton located in Wyoming.

(1) *Res Judicata Standard.*  Schlossberg cites one authority, relying on *dicta* from the 10th Circuit case of *Jiron v. City of Lakewood,* 392 F.3d 410 (10th Cir.2004) [Brief at p. 16].

In *Jiron*, the 10th Circuit applied a *res judicata* standard to the issue of full faith and credit:

> [C]ollateral estoppel bars relitigation of an issue if (1) **the issue** sought to be precluded **is identical** to an issue "actually determined" in the prior proceeding; (2) the **party** against whom estoppel is asserted **was a party to or in privity with a party to the prior proceeding**; (3) there was **a final judgment on the merits** in the prior proceeding; and (4) the party against whom the doctrine is asserted had **a full and fair opportunity to litigate the issues** in the prior proceeding. *Sunny Acres Villa, Inc. v. Cooper,* 25 P.3d 44, 47 (Colo.2001). . . .
>
> The [*Sunny Acres Villa*] court clarified that "actually litigated and necessarily adjudicated" is simply a way of defining the term "actually determined."...(citing *Restatement (Second) of Judgments* § 27 cmt. d (1980)). Accordingly, the essential inquiry under the first element is whether the issue sought to be precluded was "actually determined" in the prior proceeding.
>    *Jiron*, 392 F.3d 410, 415 -416 [emphasis supplied].

The West Virginia court's "order" retaining jurisdiction fails each of the four tests

applied in *Jiron,* a standard for *res judicata* effect essentially the same as in Wyoming.

(2) *The West Virginia Court Lacked Jurisdiction.*  The U.S. Supreme Court recognizes

that full faith and credit will not be accorded to an order entered without proper jurisdiction:

"Of course, a want of jurisdiction over either the person or the subject-matter might be

shown." [Citations omitted.]  *Fauntleroy v. Lum,* 210 U.S. 230, 237 (1908) [J. Holmes].

> Upon principle, it would seem that the operation of every judgment must
> depend on the power of the court to render that judgment; or, in other words,
> on its jurisdiction over the subject-matter which it has determined.
> *Andrews v. Andrews,* 188 U.S. 14, 35 (1903).

The West Virginia order was void as to Teton because that court had no *in personam*

jurisdiction over Teton.  "A judgment entered without the court having jurisdiction is null

and void."  *JAG v. State, Dept. of Family Services, Div. of Public Assistance and Social*

*Services,* 56 P.3d 1016, 1019 (Wyo.2002).  The West Virginia court also had no subject

matter jurisdiction over claims in Wyoming. "Jurisdiction is essential to the exercise of

judicial power, and whether a court had subject matter jurisdiction is always subject to

review and cannot be waived." *Terex Corp. v. Hough,* 50 P.3d 317 (Wyo.2002).

> Unless the court has jurisdiction, it lacks any authority to proceed, and any
> decision, judgment, or other order is, as a matter of law, utterly void and of no
> effect for any purpose. Subject matter jurisdiction, like jurisdiction over the
> person, is not a subject of judicial discretion. Subject matter jurisdiction either

exists or it does not and, before proceeding to a disposition on the merits, a
court should be satisfied that it does have the requisite jurisdiction.
*Terex Corp.*, *supra,* at 320, *quoting Boyd v. Nation,* 909 P.2d 323, 325 (Wyo.1996).

A long line of cases, progeny of *Fall v Eastin,* 215 US 1, 54 L Ed 65, 30 S Ct 3, have

held that a divorce court in one state does not have the power directly to affect, by means of

its decree, the title to real property situated in another state, event though it belongs to a party

to the divorce.  The principles involved are no different with regard to the lack of power of

the West Virginia divorce court to affect the rights of a non-party Wyoming corporation.

C.       **Conclusion.**

Defendant Schloosberg's motions to dismiss should be denied forthwith.  This Court

has *in personam* jurisdiction because Schlossberg purposefully directed his activities in

Wyoming to cause effects on Wyoming residents.  Schlossberg's misconduct in Wyoming

is governed by the Wyoming, not West Virginia, statute of limitations.  Schlossberg does not

have immunity because he acted without authority and the West Virginia divorce court which

appointed him as a receiver had no jurisdiction in Wyoming.  This Court has subject matter

jurisdiction in that the West Virginia court's attempt to "retain" jurisdiction is void because

that court never had jurisdiction over Teton or over the subject matter of this case.

Dated this 1st day of February 2007.

                                                    /s/ Charles M. Aron
                                                    Charles M. Aron
                                                    Galen B. Woelk

ARON and HENNIG, LLP
1472 North Fifth Street, Suite 201
Laramie, WY  82072
Telephone: (307) 742-6645
Fax:  (307) 742-7766
cma@a-hlaw.com
gbw@a-hlaw.com
Attorneys for Plaintiff Teton Millwork Sales

### Certificate of Service

I hereby certify that on February 1, 2007, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Amanda Marie Gundlach:  agundlach@hirstapplegate.com

Gary R Scott:  gscott@hirstapplegate.com

/s/ Charles M. Aron
Charles M. Aron

ARON and HENNIG, LLP
1472 North Fifth Street, Suite 201
Laramie, WY  82072
Telephone: (307) 742-6645
Fax:  (307) 742-7766
cma@a-hlaw.com
Attorney for Plaintiff Teton Millwork Sales