**GARY R. SCOTT**
**AMANDA M. GUNDLACH**
HIRST APPLEGATE, P.C.
1720 Carey Avenue, Suite 200
P. O. Box 1083
Cheyenne, WY 82003
(T) 307-632-0541
Fax 307-632-4999

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| TETON MILLWORK SALES. a Wyoming corporation,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>ROGER SCHLOSSBERG,<br><br>　　　　Defendant/Third Party Plaintiff<br><br>　　vs.<br><br>MICHAEL PALENCAR.<br><br>　　　　Third Party Defendant | Civil No. 07-CV-014J |

## *DEFENDANT'S REPLY TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY*

In Plaintiff's Motion to Compel Discovery it is suggested that Defendant

Roger Schlossberg (Schlossberg) when he was acting as the Court appointed Trustee/Special

Receiver for the Family Court of Jefferson County. West Virginia in the Mary Palencar v.

Michael Palencar divorce, was acting as a fiduciary on behalf of Michael Palencar. Plaintiff

**HIRST APPLEGATE**
A Professional Corporation
*Law Offices*
1720 Carey Avenue, Suite 200
P.O. Box 1083
Cheyenne, Wyoming 82003-1083

argues that therefore it is Michael Palencar who is the true "client" in regard to communications between Schlossberg and any attorney advising Schlossberg in his capacity as Trustee/Special Receiver.  Plaintiff argues that since Michael Palencar has waived the attorney/client privilege, there is no longer any basis for Schlossberg to refuse to produce documents relating to communications between Schlossberg and the Laramie, Wyoming law firm of Prehoda, Leonard & Janack.  The fallacy of the Plaintiff's argument is the contention that Schlossberg was acting on behalf and for the benefit of Michael Palencar.  The Family Court documents clearly show otherwise.

By the Family Court Order of 22 October 2002, a copy of which is attached, Schlossberg was appointed "to take possession and control of Respondent's (Michael Palencar's) assets so that such assets can be forthcoming to meet any Order that is made in this action."  Subsequently the Family Court entered its Final Order of 2 September 2003, a copy of which is also attached.  In that Final Order the Family Court made significant and substantial findings against Michael Palencar in regard to his consistent and intentional failure and refusal to comply with discovery, financial disclosure requirements, as well as prior orders of the Family Court. The Final Order includes the following findings made by the Family Court in regard to Michael Palencar:

    (a)    This Court's March 12, 2002, and April 16, 2002, orders enjoined Respondent from selling, disposing, destroying, alienating, secreting, dissipating or otherwise encumbering any assets.

**HIRST APPLEGATE**

A Professional Corporation
*Law Offices*
1720 Carey Avenue, Suite 200
P.O. Box 1083
Cheyenne, Wyoming 82003-1083

- 2 -

(1)    On May 21, 2002, the Respondent sold real estate in Preston County, West Virginia.

(2)    The June 7, 2003, Order, references that the Respondent's counsel tendered a settlement showing the May 21, 2002, sale price of the Preston County, West Virginia, real estate was $93,120.00. See, also, Petitioner's Exh. 5 (deed for sale of the property), which confirms the sale price.

(3)    At the June 7, 2002, hearing, the Court admonished Respondent for selling the real estate in violation of the Court's March 12, 2002, and April 16, 2002, orders. Further, the June 7, 2002, Order required that Respondent tender the real estate settlement proceeds to his attorney for escrow.

(4)    The Respondent did not escrow the May 21, 2002, real estate sale proceeds as required by the June 7, 2002, Order.

(5)    The Respondent continued acting in disregard of this Court's orders. Respondent continued to sell the Preston County, West Virginia, real estate as shown by: (a) Petitioner's Exhibit 6, showing on November 22, 2002, the sale of real estate for the sum of $29,469.00; (b) Petitioner's Exhibit 7, showing on February 19, 2003, the sale of real estate for the sum of $36,000.00; (c) Petitioner's Exhibit 8, showing on February 19, 2003, the sale of real estate for the sum of $42,000.00.

(6)    The Respondent was fully aware of the Court's injunctive Order not to sell assets, especially in light of the June 7, 2002, hearing when this Court admonished the Respondent against selling or encumbering any assets without the permission of the Court.

(7)    The Respondent further violated the injunctive Order concerning encumbrance of real estate. The Trustee testified Respondent owns real estate in Knoxville, Frederick County, Maryland. Trustee's Exhibit 2 shows (a) that the Respondent purchased real estate on October 15, 2001, from Roscoe Gardner Bartlett and Ellen Louise Bartlett, said real estate was

**HIRST APPLEGATE**

A Professional Corporation
*Law Offices*
1720 Carey Avenue, Suite 200
P.O. Box 1083
Cheyenne, Wyoming 82003-1083

- 3 -

unencumbered at the time of purchase, and (b) that on September 5, 2002, the Respondent encumbered the real estate in the sum of $100,000.00.

(8)    Notwithstanding the Court's injunctive Order, on April 22, 2003, the Respondent cashed in an IRA certificate of deposit with the Bank of Charles Town, receiving the sum of $26,079.69. See Trustee's Exh. 3.

(9)    The Respondent has failed: (1) to comply with Petitioner's discovery request, and (b) to provide an accounting of assets as required by the March 12, 2002, and April 16, 2002, Court orders. The accounting was needed to enable the Court and the Petitioner to determine the (1) location, identity and value of the marital assets, and (2) Respondent's income for child support and spousal support purposes.

(10)    The February 13, 2003, Order details examples of Respondent's disregard for the legal process in failing to disclose necessary financial information. The Order further references his disregard of this Court as evidenced by Respondent's letter to Petitioner dated September 20, 2002, in which he states his intention not to cooperate with Court proceedings, writing, "I am not going through a court battle. If you have me arrested for not showing up somewhere, I will just sit around and smile at people." This letter was apparently written in response to Respondent having received Notice to appear for his deposition scheduled for September 25, 2002. (See 2/13/03 Order)

(11)    Respondent failed to appear for his properly noticed deposition. (See 2/13/03 Order)

(12)    Respondent's financial statement and discovery responses are not adequate for the reasons set forth in the February 13, 2003, Order, and to date have not been supplemented.

(13)    Incorporated herein are the February 13, 2003, findings of fact concerning the Respondent's lack of cooperation and

**HIRST APPLEGATE**

A Professional Corporation
*Law Offices*
1720 Carey Avenue, Suite 200
P.O. Box 1083
Cheyenne, Wyoming 82003-1083

- 4 -

violations of Court Orders, including not only the respondent's failure to comply with discovery and violation of the injunctive Order, but also his failure to provide the following as Ordered:

    (a)    An accounting of the approximately $3,100,000.00 he received in early 2000 for his interest in a family business, and the significant financial assets he controlled prior to receiving the approximately $3,100,000.00;

    (b)    Post a $50,000.00 cash bond with the Clerk of this Court, and

    (c)    Escrow the proceeds from the sale of the Preston County real estate.

(14)    The Court reiterates its February 13, 2003, finding that the Respondent has deliberately failed to disclose financial information as required in this proceeding.

(15)    On March 5, 2003, a capias was issued for the Respondent, and law enforcement has yet to pick up the Respondent. It is ORDERED and ADJUDGED that the March 5, 2003, capias shall remain outstanding, and law enforcement shall hold Respondent until such time as he is brought before the Court to answer for his violations of the Orders of this Court as set forth herein and as set forth in prior orders.

That same Final Order ordered that Michael Palencar pay Mary Palencar the sum of Two Million Four Hundred Seventy Two Thousand Four Hundred Fifty Dollars and Fifty Cents ($2,472,450.50) and a judgment in that amount was entered. The Court made the additional finding that it did not believe Michael Palencar would comply with the Order and therefore the Court ordered that "Roger Schlossberg shall continue to serve as special receiver for the purpose of seizing Respondent's assets, including any interest or assets he

**HIRST APPLEGATE**

A Professional Corporation
*Law Offices*
1720 Carey Avenue, Suite 200
P.O. Box 1083
Cheyenne, Wyoming 82003-1083

- 5 -

owns or maintains in any corporation, as well as assets in which he has disguised or hidden his ownership interests. Mr. Schlossberg shall provide an accounting and distribute to Petitioner all assets that he may acquire to which Petitioner is entitled under the terms of this Order, less payment of his fees and expenses." The Family Court also ordered that Schlossberg's fees, costs and expenses were to be paid by Michael Palencar "as his actions have made Mr. Schlossberg's appointment as Special Receiver necessary." (Final Order, Pgs. 27, 28)

To say, as the Plaintiff is apparently contending, that Schlossberg was acting as a fiduciary for Michael Palencar in his divorce case, is clearly without factual basis. Schlossberg was a creature of the Family Court, appointed as a receiver for the purpose of locating, seizing and marshalling assets of Michael Palencar for potential distribution by the Family Court to Mary Palencar, in order to satisfy the judgment rendered against Michael Palencar. The beneficiary of any assets that Schlossberg was able to locate and seize ultimately was to be Mary Palencar in whose favor the Family Court had entered judgment. Schlossberg, as part of his efforts to locate and seize assets of Michael Palencar and his related entities, sought and received the advice of counsel. For Plaintiff to argue it was Michael Palencar who was the true "client" in respect to those communications is absurd. That same rational would support a conclusion that Michael Palencar was entitled to be present and participate in communications between Schlossberg and the attorney who was

**HIRST APPLEGATE**
A Professional Corporation
*Law Offices*
1720 Carey Avenue, Suite 200
P.O. Box 1083
Cheyenne, Wyoming 82003-1083

- 6 -

providing Schlossberg with advice as to how to seize the assets of Mr. Palencar. That is

clearly illogical. Plaintiff's Motion to Compel should be denied.

Dated: 21 August 2007.

ROGER SCHLOSSBERG,
Defendant/Third Party Plaintiff

BY: _____

GARY R. SCOTT, #5-1939
HIRST APPLEGATE, P.C.
Attorneys for Schlossberg
P. O. Box 1083
Cheyenne, WY  82003

### CERTIFICATE OF SERVICE

I certify the foregoing *Defendant's Reply to Plaintiff's Motion to Compel Discovery* was served upon all parties to this action pursuant to the Federal Rules of Civil Procedure on 21 August 2007, and that copies were served as follows:

C. M. Aron
Aron and Henning, LLP
1472 North 5th Street, Suite 201
Laramie, WY 82072

[    ] U.S. MAIL
[    ] FED EX
[    ] FAX
[    ] HAND DELIVERED
[ ✓ ] ELECTRONIC MAIL

OF HIRST APPLEGATE, P.C.
Attorneys for Defendant

**HIRST APPLEGATE**
A Professional Corporation
*Law Offices*
1720 Carey Avenue, Suite 200
P.O. Box 1083
Cheyenne, Wyoming 82003-1083

- 7 -

# ORDER OF OCTOBER 22, 2002

IN THE FAMILY COURT OF JEFFERSON COUNTY, WEST VIRGINIA

IN RE: THE MARRIAGE OF:

MARY PALENCAR,
    PETITIONER

**RECEIVED**

OCT 22 2002

JEFFERSON CO.
CIRCUIT COURT

AND

CIVIL ACTION NO. 02-D-3

MICHAEL PALENCAR,
    RESPONDENT

<u>ORDER</u>

On this the 27th day of August, 2002, came Petitioner, in person, and by counsel, David P. Greenberg, and upon the appearance of the Respondent's counsel, F. Samuel Byrer and Margaret Oliver standing in for John C. Broderick, and no appearance of the Respondent; upon the various motions scheduled for this date.

Whereupon, the Court heard proffers of counsel for each of the motions:

1.    The Petitioner's motion is granted for Kenneth Apple, CPA, to attend the deposition of Respondent.

2.    The June 7, 2002, Order scheduled for this date the Petitioner's motion for the Court to appoint a trustee. It is ORDERED that the Court shall appoint a trustee who is both a licensed attorney in Maryland, and whose practice involves business litigation, and Petitioner recommends the Court appoint Roger Schlossberg, who is licensed to practice law in both West Virginia and Maryland.

It is accordingly ADJUDGED and ORDERED that *Roger Schlossberg* is hereby appointed as trustee to take possession and control of Respondent's assets so that such assets can be forthcoming to meet any Order that is made in this action.

It is further ORDERED and ADJUDGED that the Respondent shall forthwith post a

$50,000.00 cash bond with the Clerk of this Court as security to comply with the Orders of this Court.

It is further ORDERED and ADJUDGED that attorneys Margaret Oliver and /or John C. Broderick will advise the Court if they maintained a copy of the check in the sum of $15,000.00 paid to them by the Respondent, and if so, the Court will set a later hearing to determine if Petitioner's counsel shall receive a copy of the check.

It is further ORDERED and ADJUDGED that the Court review Respondent's legal billing, and the Court upon reviewing said billing will determine whether the $5,100.00 Respondent still owes attorney John C. Broderick, if paid, should be placed in an escrow account pending further decision by the Court.

It is further ORDERED and ADJUDGED that this matter shall come on for further hearing on November 7, 2002, at 2 p.m.

The Court notes the objection of each party to all adverse rulings.

The Clerk shall enter the foregoing as of the day and date first hereinabove written and shall provide attested copies to David P. Greenberg, F. Samuel Byrer, John C. Broderick, and the Respondent, Michael Palencar, at his address of 230 Knottsville Road, Knottsville, Maryland, 21758, as well as to: Roger Schlossberg, Esq.
P.O. Box 4227
HAGERSTOWN, MD
21741-4227

William T. Wertman Jr.
Family Court Judge

10-21-02

ATTEST:

PATRICIA A. NOLAND
CLERK, CIRCUIT COURT
JEFFERSON COUNTY, W.VA.

BY

DEPUTY CLERK

Attorney for Petitioner

_____

Attorney for Respondent

# FINAL ORDER

IN THE FAMILY COURT OF JEFFERSON COUNTY, WEST VIRGINIA

IN RE:  THE MARRIAGE OF:

MARY PALENCAR,

    PETITIONER

AND                     CIVIL ACTION NO. 02-D-3

MICHAEL PALENCAR,

    RESPONDENT

RECEIVED

SEP 0 2 2003

JEFFERSON COUNTY
CIRCUIT COURT

## FINAL ORDER

This matter came on for final hearing  the 15th day of May, 2003,

upon the Petitioner's duly verified Complaint filed in the office of the

Clerk of this Court on the 8th day of January, 2002;  upon service of

process of the Summons and Complaint upon the Respondent in person

according to law  on the 1st  day of February, 2002; upon the Answer of

the Respondent served upon counsel for the Petitioner on the 12th day

of March, 2002;  upon  the  February 13, 2003, Order  of  the  Court

scheduling this matter for a final  hearing on this date and notice to the

parties of the May 15, 2003, final hearing upon service of the February

13, 2003, Order on February 14, 2003, by the Clerk of this Court;  upon

the appearance before William T. Wertman, Jr., Family Court Judge, on

the 15th day of May, 2003, of the Petitioner, in person, and by counsel, David P. Greenberg, and upon the appearance of Roger Schlossberg, Trustee, and divers witnesses, and upon no appearance this date of the Respondent.

It appearing to the Court that this cause has regularly proceeded according to West Virginia Code and the West Virginia Rules of Civil Procedure, that all fees have been paid, that this cause has now matured for hearing, and that service of process has been properly had upon the Respondent.

Thereupon, the Court proceeded to make the following findings of fact and conclusions of law on each of the following issues:

1.    <u>Divorce</u>:

    (a)    That Petitioner is now and has been for more than one year next preceding the institution of this civil action a bona fide resident of Jefferson County, West Virginia;

    (b)    that the parties hereto were married in Howard County, Maryland, on the 7th day of October, 1989;

    (c)   that the Respondent is not an infant, incompetent person, incarcerated convict, or a member of the Armed Forces of the United States of America;

    (d)   that prior to the hearing before the Family Court Judge, twenty (20) days had elapsed since the date of the filing of the Complaint, and twenty (20) days had elapsed since the date of service of process of the Summons and Complaint upon the Respondent;

    (e)   that the parties last lived and cohabited together in July 2001 in Jefferson County, West Virginia;

    (f)   that the Petitioner has grounds for divorce against the Respondent, namely, that the parties have lived separate and apart without interruption in excess of one year as set forth in West Virginia Code §48-5-202.

And it appearing to the Court from the record and testimony of the Petitioner and divers witnesses, given under oath before the Family Court Judge, that the Petitioner is entitled to the relief prayed for in her Complaint, it is ORDERED and ADJUDGED that the marriage heretofore existing between the Petitioner, Mary M. Palencar, and the Respondent,

Michael Palencar, is hereby dissolved and that the Petitioner and Respondent are hereby divorced, pursuant to West Virginia Code §48-5-202.

Whereupon, the Court proceeded to take evidence and review the papers and proceedings previously had herein regarding the following:

2. <u>Respondent's failure to comply with discovery, financial disclosure and violations of the prior orders of this Court:</u>

The Respondent has willfully and knowingly violated Court orders; he has not provided responses to Petitioner's discovery requests; and he has provided substantially incomplete financial disclosure. In this regard, the Court finds as follows:

(a) This Court's March 12, 2002, and April 16, 2002, orders enjoined Respondent from selling, disposing, destroying, alienating, secreting, dissipating or otherwise encumbering any assets.

(1) On May 21, 2002, the Respondent sold real estate in Preston County, West Virginia.

(2) The June 7, 2003, Order, references that the Respondent's counsel tendered a settlement

showing the May 21, 2002, sale price of the Preston County, West Virginia, real estate was $93,120.00. *See, also,* Petitioner's Exh. 5 (deed for sale of the property), which confirms the sale price.

(3)    At the June 7, 2002, hearing, the Court admonished Respondent for selling the real estate in violation of the Court's March 12, 2002, and April 16, 2002, orders. Further, the June 7, 2002, Order required that Respondent tender the real estate settlement proceeds to his attorney for escrow.

(4)    The Respondent did not escrow the May 21, 2002, real estate sale proceeds as required by the June 7, 2002, Order.

(5)    The Respondent continued acting in disregard of this Court's orders. Respondent continued to sell the Preston County, West Virginia, real estate as shown by: (a) Petitioner's Exhibit 6, showing on November 22, 2002, the sale of real estate for the

*Page 5 of 37*

sum of $29,469.00; (b) Petitioner's Exhibit 7, showing on February 19, 2003, the sale of real estate for the sum of $36,000.00; (c) Petitioner's Exhibit 8, showing on February 19, 2003, the sale of real estate for the sum of $42,000.00.

(6)   The Respondent was fully aware of the Court's injunctive Order not to sell assets, especially in light of the June 7, 2002, hearing when this Court admonished the Respondent against selling or encumbering any assets without the permission of the Court.

(7)   The Respondent further violated the injunctive Order concerning encumbrance of real estate. The Trustee testified Respondent  owns real estate in Knoxville, Frederick County, Maryland. Trustee's Exhibit 2 shows (a) that the Respondent purchased real estate on October 15, 2001, from Roscoe Gardner Bartlett and Ellen Louise Bartlett, said real estate was unencumbered at the time of purchase, and (b) that on September 5, 2002, the

Respondent encumbered the real estate in the sum of $100,000.00.

(8)    Notwithstanding the Court's injunctive Order, on April 22, 2003, the Respondent cashed in an IRA certificate of deposit with the Bank of Charles Town, receiving the sum of $26,079.69. *See* Trustee's Exh. 3.

(9)    The Respondent has failed: (a) to comply with Petitioner's discovery request, and (b) to provide an accounting of assets as required by the March 12, 2002, and April 16, 2002, Court orders. The accounting was needed to enable the Court and the Petitioner to determine the (1) location, identity and value of the marital assets, and (2) Respondent's income for child support and spousal support purposes.

(10)   The February 13, 2003, Order details examples of Respondent's disregard for the legal process in failing to disclose necessary financial information. The Order further references his

disregard of this Court as evidenced by Respondent's letter to Petitioner dated September 20, 2002, in which he states his intention not to cooperate with Court proceedings, writing, "I am not going through a court battle. If you have me arrested for not showing up somewhere, I will just sit around and smile at people." This letter was apparently written in response to Respondent having received Notice to appear for his deposition scheduled for September 25, 2002. (*See* 2/13/03 Order)

(11) Respondent failed to appear  for his properly noticed deposition. (*See* 2/13/03 Order)

(12) Respondent's financial statement and discovery responses are not adequate for the reasons set forth in the February 13, 2003, Order, and to date have not  been supplemented.

(13) Incorporated herein are the February 13, 2003, findings of fact concerning the Respondent's lack of cooperation and violations of Court Orders,

including not only the Respondent's failure to comply with discovery and violation of the injunctive Order, but also his failure to provide the following as Ordered:

(a) an accounting of the approximately $3,100,000.00 he received in early 2000 for his interest in a family business, and the significant financial assets he controlled prior to receiving the approximately $3,100,000.00;

(b) post a $50,000.00 cash bond with the Clerk of this Court, and

(c) escrow the proceeds from the sale of the Preston County real estate.

(14) The Court reiterates its February 13, 2003, finding that the Respondent has deliberately failed to disclose financial information as required in this proceeding.

(15) On March 5, 2003, a capias was issued for the Respondent, and law enforcement has yet to pick

up the Respondent.   It is ORDERED and ADJUDGED that the March 5, 2003, capias shall remain outstanding, and law enforcement  shall hold Respondent until such time as he is brought before the Court to answer for his violations of the Orders of this Court as set forth herein and as set forth in prior orders.

3.   Custodial Allocation:

Petitioner and Respondent have three minor children, namely, Jessica R. Palencar, born February 27, 1990; Joshua L. Palencar, born August 8, 1991, and Emma L.A. Palencar, born September 21, 1997.

(a)   Since the parties' separation, the minor children have resided with the Petitioner, and since the Court proceedings have been initiated, the Respondent has maintained little contact with the children;

(b)   The Respondent's deliberate choice  to thwart  these legal proceedings and his choice to have  limited, sporadic contact with the children  since these proceedings were initiated leads the Court to find it is

in the children's best interest not to award Respondent specific custodial allocation.   The Respondent has regrettably made a choice that he would rather avoid and disobey Court orders than to have contact with his children.

(c)   The Petitioner requests that Respondent's custodial allocation be decided by her, which request is appropriate, and in the children's best interest.

(d)   The children attend Faith Christian Academy, and the Petitioner drives approximately 120 miles each day to transport the children to and from school.

(e)   The Petitioner is a stay-at-home parent.

(f)   The Petitioner has been the parent, both prior to the separation, and subsequent to the separation, responsible for the significant majority of the children's daily caretaking functions, including but not limited to, feeding, dressing, bedtime, wake up routine, caring for the children when sick, bathing, grooming, physical safety, transportation, developmental needs, supervision of chores and other tasks, arrangements

for the children's education, arrangements for health care, moral guidance.

(g)   Due to Respondent's lack of cooperation and his failure to appear for hearings, the Court shall not award Respondent specific custodial allocation.

It is accordingly ADJUDGED and ORDERED that the Petitioner shall have sole decision making responsibility for the children, namely, Jessica R. Palencar, Joshua L. Palencar and Emma L.A. Palencar, subject to continuing judicial modification.

It is further ORDERED and ADJUDGED that the Petitioner shall have primary  custodial allocation of the children, subject to Respondent's custodial allocation as deemed appropriate by Petitioner, subject to continuing judicial modification.

It is further ORDERED AND ADJUDGED that Petitioner, solely for the purpose of all other State and Federal statutes which require a designation or determination of custody, is hereby designated custodian of the children.  This designation shall not effect either parent's rights or responsibilities.

4.   <u>Child Support:</u>

(a)   The Petitioner is not employed,

(b)    The parties chose for the children to attend Faith Christian Academy, which, during the school year, requires the Petitioner to transport the children for significant periods of time during the day.

( c)   The parties' youngest child is not  yet in elementary school.

(d)    During the parties' marriage, the parties chose for the Petitioner to be a stay-at-home parent and wife, and Respondent earned significant income to financially support the family.  Clearly, there was no financial  need for Petitioner to work outside the home, and the children's  best interest has been served by Petitioner staying at home.

(e)    The Respondent  earned significant income during the parties marriage; he has not provided sufficient information for the Court to determine his current income.

(f)    It is in the best interest of the children for the Petitioner not to be attributed income so the Petitioner may remain at home with the children as the children have been accustomed since birth.  During the marriage, Petitioner did not pursue her own employment and career opportunities so she could

be a homemaker.    During the marriage, the Petitioner obtained a degree in social work.

(g)    Petitioner's Exhibit 2, the report of Kenneth W. Apple, CPA, sets forth Respondent's income for the years 1997, 1998, 1999, and 2000.

Respondent's adjusted gross income for the years 1997 through 2000 was as follows:

(1)    1997 -- $418,983.00

(2)    1998 -- $600,432.00

(3)    1999 -- $1,015,654.00

(4)    2000 -- $2,360,067.00

(h)    In approximately February or March 2000, the Respondent received for his partial interest in a family business $3.1 million that resulted in him receiving approximately $2.6 million after federal and state taxes.

(i)    After Respondent received approximately $2.6 million net, he started a new business known as Reload, in which he is believed to be 100% stockholder, and  he maintains an ownership interest in other businesses.

(j)   For child support purposes, the Court finds it is appropriate to average the Respondent's income for the years 1997, 1998, and 1999, prior to his receipt of the approximately $3.1 million in 2000. The Court cannot reliably determine Respondent's employment income after 1999 due to Respondent's failure to provide financial information, his lack of cooperation with the discovery process, and his failure to appear at properly noticed depositions and Court hearings. Accordingly, for child support purposes, the Court finds the Respondent has a yearly adjusted gross income of $678,356.33

(k)   The tuition and fees charged for the children to attend Faith Christian Academy, which is the school the children attend now and attended prior to the separation by agreement of the parties, is approximately $7,500.00 per year. This amount is to be included as an agreed extraordinary expense in calculating Respondent's child support obligation under the child support guidelines.

(l)     Pursuant to the West Virginia child support guidelines, attached hereto, Respondent's child support obligation is $13,276.63 per month.

(m)   Prior to the parties' separation, the Respondent maintained health insurance through his employment, providing coverage for the children and Petitioner.   Presently, the Petitioner has no health insurance coverage for the children or herself.

(n)    The Respondent has the financial means to purchase health insurance for the minor children and Petitioner.   The Court cannot deduct the cost of health insurance in the child support calculation because there is no way of knowing whether the corporation(s) through which Respondent employs himself provides health insurance benefits to its employees or if the employees are required to pay the cost, and if so, how much.

It is accordingly ORDERED and ADJUDGED that the Respondent shall   pay to the Petitioner the sum of $13,276.63  per month  as child support for the children  of the parties, that said payments shall begin on the 1st  day of June, 2003, and continue on the 1st day of each and

every month  thereafter so long as the children are  unmarried and residing with the Petitioner, and are enrolled as a full-time student in a secondary education program making substantial progress towards a diploma, provided that such payments may not extend past the date each child attains the age of twenty, and that the Respondent's income shall be subject to automatic withholding as more fully set forth in West Virginia Code §48-14-401, all subject to continuing judicial modification.

It is further ADJUDGED and ORDERED that the Petitioner and Respondent shall maintain health insurance coverage on the parties' minor children, and the Petitioner shall pay the first $250.00 per year per child for the  uninsured medical, dental, surgical, optical, prescription, orthodontic,  and hospital expenses incurred on behalf of the children, and, thereafter, the Petitioner shall pay  18% and the Respondent shall pay 82%  of the remaining uninsured medical, dental, surgical, optical, prescription, orthodontic,  and hospital expenses incurred on behalf of the children,  until the children are  emancipated, married or reach  the age of majority, whichever event first occurs, subject to continuing judicial modification.

It is further ORDERED and ADJUDGED that the Respondent shall forthwith provide the Petitioner with current health insurance cards and benefit booklet pertaining to the children's health insurance coverage.

5.   Equitable Distribution:

(a)   As indicated, Respondent's lack of disclosure, violations of Court orders related to discovery, failure to provide an accounting, disposing of assets, and hiding of assets in violation of Court Orders make it difficult to ascertain the marital assets.

(b)   The Respondent verified in his financial statement that the Jefferson County, West Virginia, real estate and improvements thereon is worth $300,000.00. There is no debt owed on the property. Petitioner testified that she agrees to assign a value of $300,000.00 to the real estate.

( c)   Tim Lewis, Vice President of Deposit Operations for the Bank of Charles Town, testified that the Respondent on April 22, 2003, cashed in Jefferson Security Bank Certificate of Deposit -- IRA, account no. 109058451, in the amount of $26,079.69.

(d)   Maintained at the Bank of Charles Town are six other accounts in the names of the parties' children and the Respondent.   These accounts are as set forth on Trustee's Exhibit No. 1; the total sum of the accounts is $23,906.13.

(e)   The May 15, 2003, report of Ken Apple, expert witness accountant, was admitted as Petitioner's Exhibit 2. Mr. Apple was retained to determine the financial assets and debts of the parties, as well as Respondent's income.

(f)   Mr. Apple testified that he reviewed Petitioner's discovery requests, which, if properly answered, would have allowed him to determine how the Respondent maintained the parties' financial assets, including the $3.1 million sale proceeds.

(g)   Mr. Apple testified in accordance with his May 15, 2003, report, which the Court incorporates herein as part of its findings of fact.

(h)   Mr. Apple determined that the marital estate consisted of approximately $4,735,759.00 in financial assets soon

after the Respondent's receipt of the approximately $3.1 million from the sale of part of the family businesses to Sauder Acquisition Corporation.   The $4,735,759.00 does not include marital real estate.

(i)   Mr. Apple further included in the $4,735,759.00 approximately $383,900.00 in financial marital assets that were owned by the parties at the time of the receipt of the $3.1 million.

(j)   The $4,735,759.00 total does not include the West Virginia and Wyoming real estate.

(k)   The Respondent has maintained control of the $4,735,759.00, and has failed to account for the assets.

(l)   The $4,735,759.00 in financial assets consisted of liquid assets and various investments totaling $2,841,500.00, and $1,894,259.00 of non-liquid assets, consisting of Respondent's continuing interests in various business ventures as of February 2000.

(m)   The parties separated July 2001; however, neither the Court, Petitioner, nor Ken Apple can determine the assets of the parties on said date, because of

Respondent's lack of disclosure and his failure to provide an accounting of what he did with the assets after February 2000.

(n)   The Court could only determine the marital estate as of February 2000, because the Respondent received the $3.1 million for his share of the business then, and Ken Apple (based on what was declared for interest earned on the 1999 tax return) estimated the approximate principal sum of financial assets prior to the receipt of the $3.1 million was $383,900.00.

(o)   After February 2000, Respondent purchased an airplane, real estate in Knoxville, Maryland, and began a new business known as Reload. The Court did not include in the marital estate these assets and gave the Respondent the benefit of the doubt regarding what funds were used to purchase these assets.

(p)   Ken Apple testified it was his opinion that the Respondent transferred approximately $400,000.00 to Reload. Further, Ken Apple testified transactions appear to have taken place after February 2000 between

the Respondent and other businesses in which he owned an interest, such as Teton Millwork.

(q)   In Petitioner's Exhibit 2, a July 11, 2002, letter from the Respondent to the Petitioner, the Respondent writes that he owns a share of what is known as PA M&M (Pennsylvania M&M), that the building is worth $1.4 million, and he owns 25%, or $350,000.00.

(r)   The marital vehicles include a 2000 Dodge truck and a 2000 Dodge Durango. Petitioner received the Durango, the Respondent received the Dodge truck, and the vehicles are of approximately equal value; therefore, they offset each other for equitable distribution purposes. Petitioner also received a Plymouth Voyager worth $5,000.00.

(s)   Respondent purchased, prior to February 2000, a parcel of real estate in Wyoming, and an appraisal was produced showing a value of $54,500.00 as of September 19, 2000.

(t)   Petitioner testified that each party received marital personal property of approximately equal value.

(u)  Petitioner testified that the Respondent's girlfriend's name is Agnes Lichtner.  Petitioner's Exhibit 12 identifies Agnes Lichtner as president of a Virginia Corporation known as L.L.POH Corporation, which owns real estate in Maryland near  the Knoxville, Maryland, real estate purchased by the Respondent after February 2000.

(v)  Petitioner believes the land owned by L.L.POH Corporation is truly Respondent's land because she believes L.L.POH stands for a term the Respondent normally used, "Life, Liberty and Pursuit of Happiness."

(w)  Petitioner testified, per Petitioner's Exhibit 13, that she received a check signed by Michael Leaf paid to the order of Amerigas.  Petitioner believes the check was mailed to her in error; a stop payment was placed on the check.  The address on the check, 230 Knoxville Road, is the same address where the Respondent owns real estate.  Petitioner believes that when Respondent learned the check was provided to her, he placed a stop

payment on it; therefore, it appears the Respondent is using the name of Michael Steven Leaf.

(x)   The marital assets subject to equitable distribution are as follows:

(1)   Respondent has possession of the parties' financial assets outlined in Ken Apple's May 15, 2002, report, totaling $4,735,759.00.

(2)   Pennsylvania M&M real estate -- $350,000.00 (Respondent's share).

(3)   Wyoming real estate -- $54,500.00.

(4)   Jefferson County, West Virginia real estate -- $300,000.00.

(5)   Bank of Charles Town IRA cashed in by Respondent -- $26,079.69.

(6)   Petitioner owns a 1968 Camaro that she acquired prior to the parties' marriage and paid for prior to the marriage.   Accordingly, it is her separate property.

(7)   1997 Plymouth Voyager -- $5,000.00.

(8)  Remaining Bank of Charles Town accounts -- $23,906.13.

(9)  As previously set forth, part of the marital estate included real estate in Preston County, West Virginia, parcels of which Respondent sold, in violation of the Court Order: November 26, 2002 -- $29,469.00; February 19, 2003 -- $36,000.00, and $42,000.00. Total Proceeds; $107,469.00 The Respondent owes Petitioner one-half of said sum, or $53,734.50, and the Court not knowing the value of the remaining real estate situated in Preston County, West Virginia, shall award same to Petitioner without assessing a value, as it cannot be determined what portion of the real estate remains and as Respondent violated the Court Order against selling assets.

It is accordingly ADJUDGED and ORDERED that:

1.  Petitioner shall own  the remaining Preston County, West Virginia, real estate deeded in Respondent's name, and pursuant to West

Virginia Code §48-7-107, Richard Pill is appointed special commissioner to convey Respondent's interest in said real estate to Petitioner.

2.    Other marital assets shall be equitably distributed as follows:

Petitioner shall receive:

(a)    Jefferson County real estate and improvements thereon -- $300,000.00.

(b)    Plymouth Voyager -- $5,000.00.

( c )    Bank of Charles Town six accounts in the names of the children and the Respondent -- $23,906.13.

TOTAL:    $328,906.13.

Respondent shall receive:

(a)    Financial assets and other investments, including various business interests -- $4,735,759.00.

(b)    Respondent's interest in Pennsylvania M&M real estate -- $350,000.00

( c ) Proceeds from the sale of the Grant County real estate -- $107,469.00

(d) Wyoming real estate -- $54,500.00

(e) Bank of Charles Town IRA -- $26,079.00

TOTAL: $5,273,807.00

-   328,906.00 (Assets received by Petitioner)

$4,944,901.00

To equalize distribution, the Respondent owes the Petitioner the sum of $2,472,450.50.

3. Respondent shall pay to Petitioner the sum of $2,472,450.50 upon entry of this Order, and judgment is so entered for said amount. The Court believes the Respondent will not comply with this Order; therefore, attorney Roger Schlossberg shall continue to serve as special receiver for the purpose of seizing Respondent's assets, including any interest or assets he owns or maintains in any corporation, as well as assets in which he has disguised or hidden his ownership interest. Mr. Schlossberg shall

provide an accounting and distribute to Petitioner all assets that he may acquire to which Petitioner is entitled under the terms of this Order, less payment of his fees and expenses.

4.    Roger Schlossberg's fees, costs and expenses shall be paid by the Respondent, as his actions have made Mr. Schlossberg's appointment as special receiver necessary.

5.    Pursuant to W.Va. Code §48-7-107, Richard Pill is hereby appointed Special Commissioner to transfer to Petitioner the Respondent's interest in the parties' jointly deeded Jefferson County, West Virginia, real estate.

6. <u>SPOUSAL SUPPORT:</u>

(a)    The parties were married October 7, 1989, in Howard County, Maryland.

(b)    The parties separated July 2001.

( c)    Three children were born to the parties.

(d)    The Petitioner is age 42, and the Respondent is age 42.

(e)    The parties' youngest child is age 5.

(f)     The parties agreed that the children should attend Faith Christian Academy in Berkeley County, West Virginia.

(g)     The Petitioner drives the children to and from school, which requires her to travel approximately sixty miles per day.

(h)     Petitioner was essentially a full-time homemaker during the marriage; Petitioner attended college on a part-time basis during the marriage, earning a degree in social work in 2001.

(i)     Petitioner and the children reside on a farm that requires numerous hours to maintain and upkeep, and Petitioner spends substantial hours providing for the care of the children and maintaining their home. Respondent, since these proceedings have been initiated, has maintained little or no contact with the children.

(j)     The Petitioner's minimum monthly living expenses, not including the cost to maintain the children at Faith Christian Academy, are approximately $4,000.00 per month.

(k)   The Petitioner has foregone her own employment opportunities to be a stay-at-home mother.

(l)   Neither party suffers from any medical or mental disability.

(m)   The Court has a strong concern as to how successful Petitioner will be in obtaining what is owed to her by way of equitable distribution.

(n)   If Petitioner were to receive her equitable distribution award, that would make the spousal support award subject to review, as that would constitute a material change of circumstances.

(o)   The parties and the minor children maintained a high standard of living during the marriage, and Respondent continues to enjoy a high standard of living while he evades and disobeys the orders of this Court.

(p)   Petitioner has no health insurance, and it is estimated that health insurance costs for her will be approximately $250.00 per month.

(q)   Due to Petitioner being a single parent for three young children with little assistance from the Respondent for

the care of the children, and the parties having chosen that Petitioner would be a stay-at-home parent, it is reasonable not to expect Petitioner to seek employment outside of the home at this time or in the near future.

( r)   The Court considers other factors in an award of spousal support pursuant to W.Va. Code §48-6-301, some of which factors include the following: (1) that the Petitioner will have a difficult task  collecting what is owed to her by way of equitable distribution; and (2) the Respondent will have to answer to  this Court if he wants a spousal support reduction.   Therefore, the Court  deems it appropriate to set spousal support, subject to review, in an amount to help offset what is owed to Petitioner in equitable distribution. The Court recognizes that spousal support would not be dischargeable in bankruptcy. The Court emphasizes that   if Petitioner were to receive her equitable distribution award, the Court would consider a spousal support  reduction, upon proper notice and motion.

(s)   Kenneth Apple testified, and his May 15, 2003, report sets forth, Respondent's income.   Respondent had adjusted gross income as follows: 1997 -- $418,983.00; 1998 -- $600,432.00; 1999 -- $1,015,654.00; 2000 -- $2,306,067.00.  The Respondent produced no reliable information concerning his income after the year 2000. Respondent's income far exceeds any reasonable monthly living expenses he may have; therefore, he is financially able to pay spousal support in a fashion that would permit the Petitioner  to maintain the  relatively affluent   lifestyle   to   which   the   parties   became accustomed prior to their separation.

It is accordingly ADJUDGED and ORDERED as follows:

1.   Respondent shall pay the Petitioner the sum of $10,000.00   per   month   as   spousal   support, commencing on June 1, 2003, and a like payment falling   due   on   the   1st   day   of   each   month thereafter, until Petitioner's death or further Order of the Court, and the Respondent's income shall be subject to automatic withholding as more fully

set forth in West Virginia Code §48-14-401, all subject to continuing judicial modification. Spousal support is a debt against Respondent's estate and is enforceable through the contempt powers of the Court.

2.    Petitioner's remarriage shall not automatically terminate spousal support. The Court makes this decision in light of the fact that Petitioner will likely have extreme difficulty receiving her equitable distribution award; therefore, spousal support should not terminate simply because Petition chooses to marry, though remarriage would serve as a basis upon which Respondent could seek modification of spousal support.

### 7. PAYMENTS UNDER PENDENTE LITE ORDER:

(a)   The Respondent has paid money to Petitioner during the pendency of these proceedings.

(b)   The Respondent classifies his payments as payments toward a property settlement.

( c )    The Respondent shall receive credit for payments made to Petitioner as part of Respondent's obligation under the *pendente lite* Order(s).

(d)    Petitioner filed with the Court an accounting of the money owed under the prior orders of the Court minus money paid to date.

(e)    Under the March 12, 2002, order, the Respondent was to pay $16,643.00 per month child support beginning March 15, 2002,  spousal support of $4,500.00 beginning March 15, 2002, and suit money of $15,000.00.

(f)    The Court continued the issue of retroactive child support from February 1, 2002, through March 15, 2002.

(g)    The April 16, 2002, Order required the Respondent to pay child support in the amount of $2,933.00 beginning April 1, 2002,  spousal support in the amount of $1,500.00 beginning April 1, 2002, and the children's Faith Christian Academy tuition.

(h)    As of May 1, 2003, under the prior Order of this Court,  the Respondent owed $46,450.50 for child support, and $21,750.00 for spousal support; suit money of $7,500.00;

attorney's fees of $7,500.00; property taxes of $3,078.59; and the children's schooling through May 2003, of $6,418.00, for a total sum owed of $92,697.09, not including retroactive spousal support and child support for the period of February 1, 2002, through March 14, 2002.

(l)     Through May 15, 2003, the Respondent paid a total sum of $106,737.50 resulting in an overpayment under the *pendente lite* Orders of $14,040.41.

It is hereby ADJUDGED and ORDERED that the Court hereby applies $6,000.00 of the excess sum to retroactive child support and spousal support, leaving an overpayment of $8,040.41, which the Court hereby awards to the Petitioner as attorney's fees.

It is further ADJUDGED and ORDERED that counsel's request for prospective attorney's fees and suit money is denied, to which Petitioner's objection is noted.

It is further ORDERED and ADJUDGED that this Court's March 5, 2003, capias Order for law enforcement to bring the Respondent before this Court remains in full force and effect.

It is further ORDERED and ADJUDGED that counsel for the Petitioner, unless otherwise appearing in this matter, is discharged from further representation.

This is a final Order. Any party aggrieved by the final Order may take an appeal either to the Circuit Court or directly to the West Virginia Supreme Court. A Petition for Appeal to the Circuit Court may be filed by either party within thirty days after entry of the final Order. In order to appeal directly to the West Virginia Supreme Court, both parties must file, within fourteen days after entry of the final Order, a joint Notice of Intent to Appeal and a Waiver of Right to Appeal to Circuit Court.

It appearing to the Court that nothing further remains in this matter and that all costs are paid, it is ORDERED that this matter be retired from the docket and placed among causes ended, except for the entries of such future orders as may be necessary concerning custodial allocation, maintenance and support of the infant children born of the marriage, spousal support, enforcement of the equitable distribution award, and other provisions of this Order.

The Clerk shall enter the foregoing as of the day and date first hereinabove written and shall provide attested copies to Petitioner's counsel, David P. Greenberg;  Roger Schlossberg, special receiver, at

his address of 134 West Washington Street, Hagerstown, Maryland, 21740, and upon the Respondent, Michael Palencar, 230 Knoxville Lane, Knoxville, Maryland, 21758.

ENTER: _August 28, 2003_

_____
William T. Wertman, Jr.
A Family Court Judge

ATTEST:

BY
DEPUTY CLERK

3 cc
D Greenberg
R. Schlossberg
M. Palencar
9-3-03
DN.