Galen B. Woelk
C.M. Aron
ARON and HENNIG
1472 North Fifth Street, Ste. 201
Laramie, WY  82072
Telephone: (307) 742-6645
Facsimile:  (307) 742-7766
ATTORNEYS FOR PLAINTIFF

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| TETON MILLWORK SALES, | ) | |
| a Wyoming corporation | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 07-CV-014J |
| | ) | |
| ROGER SCHLOSSBERG, | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S BRIEF IN OPPOSITION
## TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

A.      **INTRODUCTION**.

        For the third time in the history of this action, Schlossberg recycles the same argument

that Plaintiff's causes of action arise from a West Virginia divorce action, when they do not.

Schlossberg's strategy is to foment prejudice against TMS Corporation by continuous

reference to Palencar's actions in his West Virginia divorce.  Schlossberg sidesteps the

factual issues that give rise to TMS Corporation's complaint, and fails to address the critical question of how Palencar's divorce in West Virginia could justify Schlossberg's improper actions against a Wyoming Corporation in Wyoming. Schlossberg argues his acts were authorized by a West Virginia Family Court, but fails to provide proof the West Virginia Court (1) authorized him to submit incomplete orders to TMS Corporation's agents; (2) make false representations to TMS Corporation's agents; or (3) abscond with TMS Corporation's entire assets in excess of Palencar's 25% shareholder interest. More telling, is the fact that Schlossberg provides no recognizable legal authority as to why an individual acting outside the subject matter jurisdiction of a court which appointed him to be a trustee should be immune for tortious actions committed in another state. Schlossberg now relies upon various *estoppel* arguments as grounds for this Court to disregard applicable law, and asks this Court to determine that it does not have subject matter jurisdiction over tort claims committed in Wyoming against a Wyoming corporation..

B.     **SUMMARY OF TMS CORPORATION'S ARGUMENT IN RESPONSE.**

TMS corporation is a Wyoming corporation. Its entire corporate holdings were stolen by Roger Schlossberg. Neither the West Virginia Family Court nor Roger Schlossberg ever obtained any form of jurisdiction over TMS corporation in Wyoming or West Virginia. Contrary to a West Virginia court order which directed him to obtain ancillary jurisdiction,

Schlossberg made no effort to obtain jurisdiction over TMS corporation in Wyoming. Had Schlossberg attempted to obtain ancillary jurisdiction over TMS corporation, he would have failed, because his appointing West Virginia court had no basis whatever to assert jurisdiction over TMS corporation. Unable to act legally, Schlossberg resorted to coercion and misrepresentations. He altered material documents in order to steal TMS corporation's assets from Wyoming. Had Schlossberg attempted to act with a semblance of propriety, he may have been permitted [with notice] to assert a lien or interest over, or execute against, Palencar's 25% ownership of TMS corporation stock, but only after having obtained proper ancillary jurisdiction in Wyoming. Instead, Schlossberg engaged in a course of action designed to divest TMS corporation of its entire monetary holdings, none of which belonged to Palencar or were West Virginia divorce assets.

## C.    FACTS

1.      Schlossberg admits TMS Corporation was never a party to Michael Palencar's divorce action in the Family Court of Jefferson County, West Virginia; was never a party to any related proceeding during the pendency of that divorce; and was never a named party in that divorce action. [See *Defendants Answer to Complaint*, at Document 62, ¶ ¶ 9 and 12.]

2.      On May 15, 2003, Roger Schlossberg participated in a default judgment hearing against Michael Palencar whereby he inquired as a Trustee of the West Virginia

Family Court.  During that hearing, Schlossberg was informed by CPA Kenneth Apple that Palencar owned a 25% interest in TMS Corporation, that TMS Corporation was a C Corporation, and that the remaining interest in TMS Corporation was owned by Palencar's brothers. [Aff. of Counsel - App. 1, p.59-63, *see also* Schlossberg's admissions that he knew Palencar was only a 25% owner of TMS Corporation, and that TMS Corporation was a Wyoming Corporation, *Defendant's Answer to Complaint*, Document 62, ¶¶ 14, 15 and 16.] During the May 15, 2003 hearing, Schlossberg acknowledged that Palencar's 25% interest did not mean that Palencar could actually "reach" TMS Corporation's assets. [*Id*. at p. 60, L-10-13.] Also during the hearing, and during a recess in which Schlossberg had discussions with other witnesses and attorneys, Schlossberg acknowledged the pertinent issues and difficulties which would arise from assets being held by foreign corporations in which Palencar only owned minority interests. [*Id*., p. 104, L-18-22.]

3.      On January 8, 2004, Schlossberg drafted an ORDER ESTABLISHING PENALTY SUM OF BOND OF TRUSTEE AND GRANTING OTHER RELIEF for the West Virginia Court's signature. The order did not identify TMS Corporation as an entity Schlossberg could attach. [Aff. of Counsel - App. 2, AMPR 1004-1007.]

4.      Schlossberg forwarded the January 8, 2004 Order to American Express in Wyoming for purposes of seizing TMS Corporation's American Express assets on January

12, 2004.  In the letter, Schlossberg informed Margaret Meranda that only he could direct the activities of TMS Corporation's account and misrepresented that "any instructions accepted from other parties" would subject Meranda's "institution to substantial financial risk." [*Id.* at AMPR 1003- 1007.]

5.      Also on January 12, 2004, Schlossberg made the same representations, and forwarded a similar demand letter with a copy of the January 8, 2004 order to Ferris Baker Watts [FBW] in an effort to seize all of TMS Corporation's assets which FBW held. Schlossberg represented to FBW that the January 8 order gave him authority over TMS Corporation's assets, when in it fact did not. [Aff. of Counsel - App. 3, P 1170-1174.]

6.      Also on January 12, 2004, Schlossberg made the same representations, and forwarded a similar demand letter to First National Bank of Wyoming in an effort to seize all of TMS Corporation's assets which that Wyoming Bank held.  Schlossberg represented to First National Bank that the January 8 order gave him authority over TMS Corporation's assets, when in fact it did not. [Aff. of Counsel - App. 5, HA 388.]

7.      Even though the West Virginia Court had never exercised any jurisdiction over the TMS Corporation, and made no finding whatsoever with regard to TMS Corporation, Schlossberg decided to include TMS Corporation's name in a subsequent order he drafted for the Judge's signature several days later, which was presented to the Judge in an ex-parte

manner, [with no notice to TMS Corporation] on or about January 14, 2004. [Aff. of Counsel, App. 10-A through 10-C, Depo pp. 33-34, 96-104, and 232-240.] Schlossberg states that his inclusion of TMS Corporation on the January 14, 2004 Order [without notice to TMS Corporation] was an "administerial matter." [*Id*. at Depo p. 103.]

8.     Language on page 3 of the January 14, 2009, Amended Order [Document 72-pp. 28-31] "directed [Schlossberg] to seek and obtain such ancillary jurisdiction from the Court of the several States of the United States . . ." [Document 72-p. 30.]

9.     On January 14, 2004, Schlossberg forwarded a second letter to American Express informing it to turn over TMS Corporation assets, and misrepresenting that "any action taken in derogation of my authority in those accounts would be at the express financial risk of American Express."  Schlossberg presented American Express with only three pages of the four page January 14, 2004 order, omitting the third page which discussed  ancillary jurisdiction. [Aff. of Counsel, App.  2 at AMPR 1009-10013.]

10.     Schlossberg made similar representations, and forwarded a similar demand letter to FBW on January 14, 2004.  Schlossberg presented FBW with only three pages of the four page January 14, 2004 order, omitting the third page which discussed ancillary jurisdiction. [Aff. of Counsel, App.  3 at FBW 1122-1130.]

11.     Schlossberg made similar representations, and forwarded a similar demand

letter to First National Bank of Wyoming on January 14, 2004.  Schlossberg presented the

Wyoming Bank with only three pages of the four page January 14, 2004 order, omitting the

third page which discussed ancillary jurisdiction. [Aff. of Counsel, App.  5 at HA 383-387.]

      12.    Schlossberg obtained all of TMS Corporation's funds deposited with FBW in

the amount of $27,050.19 on or about January 21, 2004. [Aff. of Counsel, App. 3 at FBW

1003-1004.]

      13.    Schlossberg obtained all of TMS Corporation's funds on deposit with

American Express in the amount of $33,190.23 and identified those funds as "Teton

Millwork" funds in a transfer check he wrote. [Aff. of Counsel, App. 4 at HA0390.]

      14.    On January 21, 2004 Schlossberg received a letter from TMS Corporation's

aircraft insurer documenting that the airplane Schlossberg planned to seize was insured by

TMS Corporation. [Aff. of Counsel, App. 7 at P 1272-1276.]  Also in January of 2004,

Palencar told Schlossberg under oath that the aircraft was an asset of TMS Corporation.

[Aff. of Counsel, App. 9, Depo pp. 6-7.] Schlossberg admits that Palencar's attorney also

informed him the aircraft was an asset of TMS Corporation. [Aff. of Counsel, App. 10, Depo

pp. 92-99.] Schlossberg subsequently seized TMS Corporation's aircraft, and relocated it to

Maryland.

      15.    On January 23, 2004, Schlossberg presented TMS Corporation's CPA in

Laramie, Wyoming, with only three pages of the four page January 14, 2004 order, omitting the third page which discussed ancillary jurisdiction. [Aff. of Counsel, App.  5 at HA 383-387.]  It was Schlossberg's intent to have Mader turn over all of TMS Corporation's corporate books and tax statements. [*Id*.]

16.    In the first week in February, Schlossberg contacted the Laramie Postmaster, informed it he was entitled to intercept all of TMS Corporation's mail, and provided the Laramie Postmaster with only three pages of the four page January 14, 2004 order, omitting the third page directing him to obtain ancillary jurisdiction. [Aff. of Counsel, App.  8 at P1187-1193.] In doing so, Schlossberg was subsequently able to seize TMS Corporation's Wyoming assets, mail and confidential business and corporate information.

17.    Schlossberg never provided TMS Corporation or Palencar with any notice that he was seizing and redirecting their Wyoming mail.   [Aff. of Counsel, App. 10, Depo p. 242.]

18.    After compensating himself with commingled funds he seized from Palencar and TMS Corporation, Schlossberg paid funds to Palencar in conformity with a global settlement reached between Michael and Mary Palencar in their West Virginia Divorce. [Aff. of Counsel, App. 4 - HA 356, and App. 9 - Depo pp. 145-151.]

19.    Schlossberg's explanation for the missing page three of the January 14, 2004,

Order is that it was a "clerical error."  [Aff. of Counsel, App. 10, Depo p. 244.]

20.     In a thirty-seven page FINAL ORDER filed September 2, 2003, in the Palencar divorce, the West Virginia Family Court made NO assertion or finding that jurisdiction was ever exercised over TMS corporation; that TMS corporation was ever a party to the divorce action; that TMS corporation was ever served with process or notice; or that TMS corporation's entire holdings and assets in Wyoming could or would be subject to attachment by Roger Schlossberg.  [This document is found in the Court file at 2:07-cv-014-Document 8, pp. 1-39].  Schlossberg relies upon this order as his basis to have acted against and drafted orders against TMS Corporation, and suggests that page 27 of the September 2, 2003 Order makes a formal finding as to TMS Corporation being an alter ego of Michael Palencar. [Aff. of Counsel, App. 10, Depo pp. 228-232.] Said order makes no such finding. [*Id*.]

21.     Schlossberg never affected service on TMS Corporation in the West Virginia action; is unaware of service of process ever having been entered against TMS Corporation in the West Virginia divorce action; is  unaware of any action to pierce the corporate veil of TMS Corporation in the West Virginia Action, and never initiated an action to pierce the corporate veil of TMS Corporation himself.  [Aff. of Counsel, App. 10, Depo pp. 28-32.]

22.     Schlossberg never obtained ancillary jurisdiction in Wyoming before taking action against TMS Corporation in Wyoming.  [Aff. of Counsel, App. 10, Depo p. 68.]

D.    **ARGUMENT.**

1.    **Absolute Immunity**

*Schlossberg's theory that piercing the veil would provide him with immunity.*

The Tenth Circuit aptly summarized the law of immunity as it applies to Schlossberg,

clarifying that "the quasi-judicial immunity of a court-appointed receiver, however, is not

limitless.  In order to be immune, the receiver must act within the scope of his authority in

carrying out a court order." [U.S.C.A. Mandate, found in this Court's file at 2:07-cv-014-

Document 59, p. 10.]  In applying immunity law to the facts of TMS Corporation's action

against Schlossberg, the Court further determined that:

> While the court order permitted Mr. Schlossberg to collect Mr. Palencar's
> assets even if they were held in the name of another entity, including TMS, the
> court order did not grant Mr. Schlossberg authority to seize assets that did not
> belong to Mr. Palencar.  **In fact, the court could not grant such authority
> if the affected individuals or entities were not parties to the proceeding** –
> and TMS was not a party to the Palencars' divorce proceeding.
>
> > [*Id*. at Document 59, pp. 11-12, also citing *United States v. Bigford*,
> > 365 F.3d 859, 864-65 (10th Cir. 1977) ("[J]udgments rendered by a
> > court lacking jurisdiction are void.") (emphasis supplied).]

Schlossberg is not content with this proper explanation of the law of jurisdiction.

Instead, he now argues a comment in the 10th Circuit Court's decision permits him to defend

against TMS Corporation's action by proving he could have pierced the corporate veil of

TMS Corporation at some point prior in time to the torts alleged. Schlossberg concludes that if he can provide an excuse or justification for his improper acts, then he can obtain immunity. The 10th Circuit's decision provides no such relief, and most definitely did not create a new legal standard or theory permitting Schlossberg to avoid liability by proving a "I could and should have done this."

The 10th Circuit's analysis was straight forward: "If Mr. Schlossberg . . . sought to take the assets of TMS absent any colorable evidence to justify piercing the corporate veil of TMS . . . then he exceeded the scope of his authority . . . and would not enjoy absolute immunity." *Id.* This conclusion, when read in conjunction with the Court's reminder that "a personal judgment entered without jurisdiction over the person violates due process and is void," states the obvious: If Schlossberg can prove the West Virginia Family Court exercised jurisdiction over TMS Corporation, and that evidence was presented in the West Virginia court which justified piercing the corporate veil of TMS, than Schlossberg can present this Court with those prior facts and evidentiary findings in support of his claim of absolute immunity claim." *Id*. citing *West v. Capitol Fed. Sav. and Loan Ass'n*, 558 F.2d 977, 980 (10th Cir. 1977).

Instead, Schlossberg suggests all he has to do to prove the West Virginia Family Court Order was valid against TMS Corporation [and thus obtain absolute immunity] is to prove

he could have pierced the veil of TMS Corporation in the past.  This argument is baseless for a number of reasons.

Regardless of what Schlossberg can prove *today* with regard to whether the corporate entity of TMS Corporation could have been disregarded 5 years ago, those facts will not and cannot provide the West Virginia Family Court with jurisdiction over TMS Corporation back then or presently.  Without having asserted prior jurisdiction over TMS Corporation, the West Virginia Court's historic orders or findings are void as to TMS, and Schlossberg's actions against TMS in Wyoming are not judicial functions.  This is true even if Schlossberg could pierce the veil of TMS Corporation five years later.

The West Virginia Family Court could NEVER have obtained personal jurisdiction over Teton Millwork Sales or its other shareholders in West Virginia even had it wanted to disregard that entity in a West Virginia Court.  The West Virginia Court had jurisdiction over Michael Palencar, and may have had authority to offset and distribute Palencar's property in West Virginia so as to equalize Palencar's 25% ownership in a foreign state corporation.  Other than those remedies as were enjoyed by that family court of limited jurisdiction, the West Virginia court had no authority to [and did not] make the type of foreign corporation findings Schlossberg suggests this Court can now make in the West Virginia Court's stead.  A long line of cases, progeny of *Fall v. Eastin*, 215 U.S. 1, 54 L.Ed. 65, 30 S.Ct. 3 (1909),

espouse the same principal: a divorce court in one state does not have the power to directly affect, by means of its decree or findings, the title to real property situated in another state, even though the property may belong to a party to the divorce.  That principal is no different with regard to the lack of power of the West Virginia divorce court to affect the rights of a non-party Wyoming Corporation and its assets.

If Schlossberg believes he can now pierce the corporate veil of TMS Corporation and thus deprive TMS Corporation's of their shareholder interest in the corporation [and of their respective interests in the pending claims], than he has improperly asserted that cause of action.  Schlossberg is required to properly initiate a third-party complaint and bring such allegations against all four of TMS Corporation's shareholders, Michael Palencar, Joe Palencar, David Palencar and James Palencar. [See *Plaintiff's Verified Answers to Defendant's First Interrogatories*, Case 2-07-cv-014-Document No.-72-3, p. 3.]   That Schlossberg now requests this Court to determine TMS Corporation was an alter-ego of its shareholders, without notice or service of process on each shareholder whose interest would be compromised, further reflects Schlossberg's prior and present disregard for jurisdictional requirements.

Schlossberg has put very little analysis into his newly developed theory that he can pierce TMS Corporation's veil and avoid liability.  For example, what state's law does

Schlossberg suggest would apply to his attempt to pierce the corporate veil?  Is it the law of West Virginia [as Schlossberg suggests should be applied with regard to his statute of limitations argument] or is it the law of Wyoming?  The law of Wyoming does not permit the disregard of a corporate entity unless the entity "is used to defeat public convenience, justify wrong, protect fraud, or defend crime." *Langdon v. Lutheran Brotherhood*, 625 P.2d 209, 213 (Wyo. 1981), see also *Kaycee Land and Livestock v. Flahive*, 46 P.3d 323 (Wyo. 2002). In what manner does Schlossberg allege TMS Corporation was formed to protect or sanction fraud or justify a wrong?  Does Schlossberg accuse each of TMS Corporation's shareholders of engaging in these acts?   More particularly, does Schlossberg allege that TMS Corporation's incorporation and issuance of By-Laws on February 1, 1996 was somehow done so as to hide the assets of Michael Palencar in a West Virginia divorce action that would not occur until years later?

Finally, Schlossberg's suggestion that this Court can pierce the veil of TMS Corporation in a summary judgment proceeding is also improper.  Courts [including West Virginia's] are very clear: "[T]he propriety of piercing the corporate veil should rarely be determined upon a motion for summary judgment.  Instead, the propriety of piercing the corporate veil usually involves numerous questions of fact for the trier of the facts to determine upon all of the evidence." *Laya v. Homes*, 352 S.E.2d 93, 102 (W. Va. 1986), see

also *MFP Eagle Highlands v. American Health Network of Indiana*, 2009 WL 77679, ¶ 10

(U.S.D.C. - S.D. Ind., 2009), referencing *Community Care Center, Inc. v. Hamilton*, 774

N.E.2d 559, 565 (Ind. App. 2002) (which states: "Piercing the corporate veil should only be

accomplished on summary judgment in extraordinary circumstances such as when it is

patently obvious that the sole purpose for a corporation's existence is to perpetrate a fraud

or injustice.").  Were Schlossberg permitted to allege Teton was Palencar's alter ego, such

determination could only be made after a full presentation of the facts surrounding TMS

Corporation's historic operations.

For purposes of TMS Corporation's presentation of facts with which to defeat a

motion for summary judgment, TMS Corporation relies upon many of those documents as

already submitted by Schlossberg: Document 72-5, pp. 1-23 [Minutes and Corporate

Formality Documents]; Document 72-3, pp. 1-27 [Plaintiff's Verified Answers to

Interrogatories]; Document 72-4, pp. 1-22 [Plaintiff's Rule 26 Submission and TMS

Corporation Documents]; as well as Palencar's testimony as the designated agent of TMS

Corporation submitted by Schlossberg as Document 72-2, and submitted herein with the

AFFIDAVIT OF COUNSEL as Appendix 9.  All of these documents and facts evidence the proper

operation of TMS Corporation in the past, and would make Schlossberg's motion to

disregard the corporate entity a question of fact to be properly determined by a fact finder.

*Schlossberg's representation that he had authority to seize all of Teton's Assets.*

Schlossberg states: "Very simply, the Orders of the Family court, and specifically the Order of 13 February gave Schlossberg the authority to seize assets of Teton, and Schlossberg did that." [Document 71-p. 17.] This representation is false. The West Virginia family Court orders, on their face, gave Schlossberg the authority to seize assets that Michael Palencar had an ownership interest in. [See Document 72, p. 25.] Nothing more, nothing less. As set forth, referenced and identified in the facts above, Schlossberg did not do that. Instead, he seized, without notice or process, all of TMS Corporation's liquid assets. Schlossberg did this, knowing that the only thing he could possibly have attached in Wyoming was Palencar's 25% of TMS Corporation's shares. A shareholder's ownership in shares does not entitle the shareholder to that percentage of the Corporation's liquid assets held in the corporate bank account. This fact is fundamental, was previously disregarded by Schlossberg, and remains a fact which Schlossberg sidesteps.

"By its nature, a West Virginia Family Court Order has no effect in Wyoming until given full faith and credit by a Wyoming Court." [Document 59, p. 12.] Until Schlossberg obtained ancillary jurisdiction of that Order in Wyoming, he had no legal basis from which he could exercise jurisdiction over TMS Corporation in Wyoming. "[Q]uasi-judicial immunity will not attach to state officials acting 'outside the scope of their jurisdiction.'"

*Turney v. O'Toole*, 898 F.2d at 1474, quoting *Cook v. Consentino*, 876 F.2d 1 (1ˢᵗ Cir. 1989). When Schlossberg committed fraud and abuse of process in Wyoming, his authority in that foreign state was no greater than the force or effect of the West Virginia Family Court Order in Wyoming.   The effect of that Order on TMS Corporation at the time Schlossberg committed those torts was a nullity.  Because the Order had no effect over TMS Corporation in Wyoming, Schlossberg's claim that it provides him immunity for his tortious acts on those dates also fails.

> ***Schlossberg's argument that TMS Corporation is estopped from challenging the validity of the Orders of the Family Court.*** [Document 71, p. 17.]

A West Virginia Circuit Court – a general jurisdiction trial court, not the state's single appellate court – found that the acts of the Family Court <u>Judge</u> in the State of West Virginia (not the acts of Schlossberg) were "judicial acts." [*Id.* at p. 16, ¶ 11.] TMS Corporation does not dispute that conclusion.  Whatever Order the West Virginia Family Court Judge issued in West Virginia is a valid order in the State of West Virginia, as held by the West Virginia Circuit Court in concluding Judge Wertman's orders were "impliedly" made within the scope of the West Virginia Family Court's jurisdiction for purposes of that judge's absolute immunity. [Case 2:07-cv-014-Document 8-p. 18.] TMS Corporation concedes that whatever acts the West Virginia Family Court Judge took *within the jurisdiction of West Virginia* were

judicial and the judge was immune from suit.  However, the West Virginia Circuit Court did not conclude Schlossberg's acts were judicial and did not in any way condone or hold as immune any fraudulent or unauthorized acts of Schlossberg outside of West Virginia. Similarly, Schlossberg's acts in Wyoming could not have been judicial in any form since the West Virginia Court had no jurisdiction over TMS Corporation, and could never obtain it.

Collateral Estoppel has no application to TMS Corporation's pending action against Schlossberg for torts he committed in Wyoming.  The issues here were not raised and not decided in a West Virginia court.  A West Virginia Circuit Court's affirmation of the validity of Judge Wertman's Order in West Virginia has no applicability to questions of an Order's enforceability in Wyoming or to a collateral attack of that Order in any foreign state outside the subject matter jurisdiction of the West Virginia Family Court.

**2.    <u>Statute of Limitations</u>**

Contrary to Schlossberg's assertion, the "process" at issue in this action does not derive from West Virginia Court Orders, but from Schlossberg's use of said orders to effectuate ulterior purposes that had material effects in Wyoming.  Schlossberg's abuse of process included fraudulent presentation of incomplete orders, and threatening letters which misrepresented his authority to persons and entities located in Wyoming so that he could obtain all of TMS Corporation's assets.  The Restatement of Conflicts is appropriately cited

by Schlossberg, and indicates that when a plaintiff's action in reliance upon an alleged misrepresentation took place in a forum state where the false representations were made and received, the local law of the forum state determines the rights and liabilities of the parties. *Restatement of Conflicts*, 2d. § 148(1).  With regard to TMS Corporation's pending action, the local law of the forum state would be Wyoming.

Schlossberg urges this Court to apply the law of a foreign state that has absolutely no relation to the Plaintiff, the locality of the torts committed, or location of the damages incurred.  More significantly, Schlossberg suggests West Virginia law should apply to a Wyoming-based action, and to a Wyoming Plaintiff who was never subject to the jurisdiction of the West Virginia Court.  West Virginia law is no more applicable than the prior West Virginia Orders Schlossberg alleges could somehow have bound TMS Corporation.

And finally, Schlossberg makes the absurd policy statement that "[i]t is of significance in considering the contacts of the parties with the State of Wyoming that the Defendant who allegedly made the misrepresentations has never set foot in the State of Wyoming and did not establish the *minimum contacts* necessary for this Court to even have personal jurisdiction." [Document 71, pp. 20-21.] Apparently, Schlossberg has already forgotten that in some form of misbegotten strategy he consented to the personal jurisdiction of this Court during the 10th Circuit's review.  Schlossberg's attempt to argue a policy based *minimum contacts* analysis,

and his suggestion that this Court would not have personal jurisdiction is disingenuous, and should be disregarded.   Wyoming's statute of limitations properly applies to TMS Corporation's claims.

### 3.   Subject Matter Jurisdiction

Schlossberg argues this Court should give *full faith and credit* to a West Virginia Family Court Order that purportedly retained jurisdiction over claims arising from the "performance of Schlossberg of his duties as a trustee or as a special receiver." [Document 71, p. 23.] At the outset, an important distinction should be made: TMS Corporation is suing Schlossberg as an individual, NOT as a receiver of the West Virginia Court, and NOT for the performance of his duties as a trustee or a receiver.   That distinction nullifies Schlossberg's suggestion that a foreign court's order has any applicability to a Wyoming Corporation seeking the redress of grievances in the State of Wyoming.

Schlossberg's remains unable to prove the West Virginia Family Court had obtained *in personam* jurisdiction over TMS Corporation in the West Virginia divorce.  Without the prior exercise of jurisdiction over TMS Corporation in a West Virginia Court, no Wyoming Court would have accorded *full faith and credit* to any West Virginia Order Schlossberg may have presented.   Were Schlossberg to represent that he could have obtained ancillary jurisdiction over TMS Corporation in a Wyoming court, he would be replicating the same

misrepresentations he made to TMS Corporation's agents.

Had this action been brought by Palencar, Schlossberg's *full faith and credit* argument might have meaning.  However, a West Virginia Family Court's Order, entered in a divorce action, has no legal application or effect upon an unrelated Wyoming Corporation which did not appear in, and was not a party to the West Virginia divorce proceeding.  If Schlossberg had authority to act in West Virginia, it is irrelevant to Wyoming, and was relevant only to Palencar as a party in the West Virginia divorce.  West Virginia jurisdiction over a TMS Corporation shareholder is unrelated to the question of in personam or subject matter jurisdiction over TMS Corporation.

Schlossberg also asserts a public-policy based *full faith and credit* argument, suggesting TMS Corporation's action should be litigated in West Virginia since the West Virginia Family Court "has an interest in all matters that may arise from its decisions." [Document 71, p. 24.]  Schlossberg's suggestion that a West Virginia Family Court could assert jurisdiction over TMS Corporation's claims is an impossibility.  A West Virginia Family Court is a court of limited jurisdiction.  See *W.V. Stat.* § 51-2A-2(d):

> A family court is a court of limited jurisdiction.  A family court is a court of record only for the purpose of exercising jurisdiction in the matters for which the jurisdiction of the family court is specifically authorized . . . A family court may not exercise the powers given courts of record . . . unless specifically authorized by the Legislature.

The jurisdictional limitations of the West Virginia Family Court would preclude it from addressing claims in Wyoming, asserted by a Wyoming Corporation, against an individual [Schlossberg] who resides and does business in Hagerstown, Maryland. The West Virginia Court would not and cannot have or obtain subject matter jurisdiction. There is no other proper forum where TMS Corporation could receive proper relief, and no conceivable reason why a Wyoming corporation would be required to consent to the jurisdiction of a West Virginia Family Court to redress grievances done to it in the State of Wyoming. For these reasons, Schlossberg's *full faith and credit* argument should be rejected.

### 4.   Punitive Damages

In his argument to dismiss TMS Corporation's request for punitive damages, Schlossberg attempts to paint himself as an innocent layperson who may have acted negligently in his interpretation of the West Virginia Family Court's Orders. What is evident from a review of Schlossberg's deposition, and which will be proven at trial, is that Schlossberg is an experienced attorney, having conducted thousands of trusteeships in Federal Bankruptcy Court. Schlossberg's suggestion that he did not know he did not have authority to abscond with all of TMS Corporation's assets, or that he thought or interpreted a West Virginia Family Court order [that he drafted] as sufficient to intercept a corporation's mail from a federal carrier are issues to be determined by a jury, and not by Schlossberg.

Schlossberg knew exactly what he was doing when he took a Wyoming Corporation's assets, as any other practicing attorney would.  Palencar's behavior in West Virginia does not somehow make Schlossberg's actions excusable. Whatever Schlossberg may have been *attempting* to do can only be defined by what he actually did.  Schlossberg did not collect the 25% shareholder interest of Palencar, but did abscond with the entire monetary assets and holdings of TMS Corporation.

Schlossberg states "nobody can seriously assert that this case involves an intentional tort or a tort involving malice." [Document 71,, p. 24.] TMS Corporation disagrees, as would other individuals and agents of TMS Corporation that Schlossberg threatened in Wyoming. TMS would assert and intend to prove that Schlossberg did these things for a variety of reasons, including the familiarity he had with maintaining a position of authority over debtors, because he thought he could get away with it and did not expect a judicial challenge to his actions; and because he was being well compensated for his overbearing actions from those assets he took from the TMS Corporation.

In Wyoming, "punitive damages are an element of a claim or cause of action and are not a separate claim." *Errington v. Zolessi*, 9 P.3d 966, 969 (Wyo. 2000).  Both of TMS Corporation's actions require proof of Schlossberg's intentional acts.  TMS Corporation's request for punitive damages "constitute[s] an element of recovery on [TMS Corporation's]

underlying causes of action." *Id*. at 969, citing 22 Am.Jur.2d *Damages* § 741 at 794-95 (1988).  If TMS Corporation is ultimately successful at trial in obtaining a judgment against Schlossberg for his fraud and/or abuse of process, it will have proven that Schossberg's acts were intentional, willful and wanton.  In that instance, punitive damages will remain at issue, will be derived from the facts presented at trial and should be properly determined by a jury. Schlossberg's request for a summary judgment determination of whether his acts were intentional requires a careful review of all of the facts at trial. Schlossberg's request for summary judgment review of the punitive damage claims at issue is improper, as the Wyoming Supreme Court has "repeatedly treated the question of whether conduct was willful and wanton as a question of fact." *Id*. at 973.

E.      **Conclusion.**

        Schlossberg's misconduct in Wyoming is governed by the Wyoming, not West Virginia, statute of limitations.  Schlossberg does not have immunity because he acted without authority and the West Virginia divorce court which appointed him as a receiver had no jurisdiction in Wyoming.  This Court has subject matter jurisdiction because the West Virginia court's attempt to "retain" is void because that court lacked jurisdiction over Teton and the subject matter herein.  Punitive damages are an issue to be determined by a jury, after having been presented with all evidentiary facts.

Dated this 23rd day of July, 2009.

ARON and HENNIG, LLP
Attorneys for Plaintiffs


BY: _____
        GALEN WOELK


### Certificate of Service

I hereby certify that on July 23, 2009, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Amanda Marie Gundlach:  agundlach@hirstapplegate.com


Gary R Scott:  gscott@hirstapplegate.com


/s/ Galen Woelk
        Galen Woelk
ARON and HENNIG, LLP
1472 North Fifth Street, Suite 201
Laramie, WY  82072
Telephone: (307) 742-6645
Fax:  (307) 742-7766
gbw@a-hlaw.com
Attorney for Plaintiff Teton Millwork Sales