GARY R. SCOTT
AMANDA M. GOOD
HIRST APPLEGATE, LLP
1720 Carey Avenue, Suite 200
P. O. Box 1083
Cheyenne, WY 82003
(T) 307-632-0541
Fax 307-632-4999

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| TETON MILLWORK SALES, a Wyoming corporation, | } } } | |
| Plaintiff, | } } | |
| vs. | } } | Civil No. 07-CV-014J |
| ROGER SCHLOSSBERG, | } } | |
| Defendant | } } | |

## DEFENDANT'S REPLY TO PLAINTIFF'S MOTION IN LIMINE

Plaintiff in its Motion in Limine asks that this Court not permit there to be any evidence presented at trial on the issue of whether Plaintiff Teton Millwork Sales was at relevant time the alter ego of Michael Palencar. Plaintiff makes this request even though it is evident from the pleadings filed in this case as well as Orders issued by this Court and by the Tenth Circuit Court of Appeals that the issue is relevant and should be litigated.

If Mr. Schlossberg did not simply seek to secure Mr. Palencar's assets but rather sought to take the assets of TMS (Teton) absent any colorable evidence

to justify piercing the corporate veil of TMS in such a fashion, then he exceeded the scope of his authority by not acting in accordance with the court order and would not enjoy absolute immunity.  Order and Judgment, Tenth Circuit Court of Appeals.

The foregoing analysis certainly does not resolve the issue of whether Mr. Schlossberg will ultimately enjoy absolute immunity.  Because we are reviewing the grant of a motion to dismiss, we need only decide whether the complaint states sufficient facts such that it is plausible that Mr. Schlossber does not enjoy absolute immunity.  While in many cases it may be clear on a motion to dismiss whether absolute immunity applies, in this case that issue must be resolved in further proceedings once the parties have had the opportunity to develop the facts through discovery.  Order and Judgment, Tenth Circuit Court of Appeals.

Defendant in his Answer to Complaint alleged that at all times relevant hereto Plaintiff was the alter ego of Michael Palencar.  In this Court's Order on Final Pretrial Conference one of the stated Issues of Fact is "whether there is colorable evidence that TMS is the alter ego of Michael Palencar...".  And in this Court's Order Denying Motion for Summary Judgment it was stated "The parties have genuine disputes as to the underlying facts in whether the corporate form should be disregarded under Wyoming law so as to permit Schlossberg, as the Court appointed Trustee (under West Virginia law) to seek to recover or tap into those corporate assets to satisfy obligations apparently owed by Michael Palencar.  This Court further stated that "The Court does not agree with Schlossberg's assertion that there is not undisputed evidence as to whether TMS was Palencar's alter ego justifying piercing the corporate veil.  While the evidence is "arguably colorable" it is not undisputed and does not satisfy the requirements of Fed. R. Civ. P.56 where judgment

should be rendered "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."" The Court then stated "In the absence of a clear direction from the Tenth Circuit otherwise, and where the issues are genuinely disputed and the conclusions to be drawn from the facts are not entirely clear as a matter of law, summary judgment in favor of either party must be denied."

At trial Defendant is prepared to present the following evidence on this issue:

- Michael Palencar (Palencar) as Teton's corporate representative in this case, indicated in written discovery that his father Joseph Palencar was president of Teton at the times relevant to Plaintiffs' claims (Plaintiff's Answers to Interrogatories, #3). However, Joseph Palencar in his deposition testified that he has no memory of ever being president of Teton. (Joseph Palencar Depo., p. 6.)

- Joseph Palencar has no memory of ever attending any directors or shareholder's meetings of Teton. (*Id.* at 7, 29 and 30.)

- Joseph Palencar, as president of Teton has no information as to where corporate documents might be. (*Id.* at 16.)

- Since approximately 2000 Teton has done "nothing". It does not manufacture anything, it does not sell anything, it does not buy anything, it does not service anything, and it has no customers. Its president did not know whether or not it even had an office. (*Id.* at 20, 21.)

- To the extent Teton was involved in any transactions, it would have been Michael Palencar who carried out those transactions. (*Id.* at 51, 54.)

- A Cessna aircraft was purchased by Michael Palencar. Joseph Palencar, as president of Teton initially believed that the aircraft was owned by Michael. Michael has told his father that the aircraft was actually owned by Teton. Therefore Joseph Palencar now believes that Teton owned that Cessna aircraft. However, Joseph has no explanation as to why Michael would need an aircraft for Teton's business; there is no good reason why Teton would ever own a plane; the purchase of the aircraft was not authorized by Teton; the use of the aircraft by Michael was not authorized by Teton, and Michael is the only shareholder or director within Teton who has a pilot's license. (*Id.* at 25, 26, 27, 46, 47, 57.)

- Although Michael indicted that Teton had loaned him money on a couple of occasions, Joseph Palencar as president of the company was not aware that that had ever been done. (*Id.* at 41; Plaintiff's Answers to Interrogatories, #7.)

- The physical address of Teton is a bed and breakfast owned by Michael Palencar and his wife, in Friendsville, Maryland. (Joseph Palencar Depo., pp. 28, 29.)

- Michael Palencar is a director of Teton and is Teton's representative for this lawsuit, and is the person who knows the most about any transactions of Teton. (Michael Palencar Depo., pp. 17, 19, 20.)

HIRST APPLEGATE, LLP
LAW OFFICES
1720 CAREY AVENUE, SUITE 200
P.O. BOX 1083
CHEYENNE, WYOMING 82003-1083

- 4 -

- Michael Palencar calls himself the "manager" of Teton, but he does not remember any corporate meeting or corporate resolution when that was decided. (*Id.* at 20, 67, 68, 69.)

- Palencar believes that his father is now president of Teton.  Palencar was president himself at one time, but does not know when that changed, or why that changed.  (*Id.* at 48, 62, 64.)

- Michael Palencar handled the checkbook for Teton.  (*Id.* at 47.)

- Palencar remembers meeting with his dad in Wyoming to hire a law firm to sue Schlossberg in this case.  Otherwise Palencar does not recall any prior meetings of the corporation that may have been held.  (*Id.* at 65, 66, 67.)

- Teton has never had any paid employees.  (*Id.* at 75.)

- Since 2003 Teton's principal office has been Palencar's house in Friendsville, Maryland.  (*Id.* at 48, 49, 142, 143.)

- At one point Teton did have a post office box, but later Teton's mail was forwarded directly to Palencar, wherever Palencar was.  (*Id.* at 76.)

- Since 2003 Teton's records have been kept at Palencar's home in Friendsville, Maryland.  (*Id.* at 51.)

- Palencar initially testified that it was he and his dad who decided to sue Judge Wertman following the conclusion of the Divorce Proceedings.  He later indicated that he may have made that decision as "manager" of Teton.  (*Id.* at 91,

92.)  Joseph Palencar however testified he was not involved in the suit against

Judge Wertman.  (Joseph Palencar Depo., p. 6.)

- Teton apparently was in the practice of preparing minutes of Shareholder's

    Meetings that did not occur.   The "Corporate Notebook" of Teton contains

    minutes of shareholder's meetings signed by Palencar as president for the years

    1996-2001.   That Notebook contains no minutes of any purported meeting

    occurring after 8 January 2001.  (Plaintiff's Rule 26 Discovery, documents pp.

    1132-1164 which constitute the "Corporate Notebook.")   Neither Palencar nor

    his father could recall the corporate meetings that are referenced in the Minutes.

- Teton loaned Palencar and his other corporations money.  Palencar carried out

    those transactions for Teton as its "manager," believing that no corporate

    authorization was required for loans to him.    That belief of Palencar is

    inconsistent with Teton's By-Laws that indicate that no loans shall be given

    unless "authorized by a resolution of the Board of Directors."  (Plaintiff's Rule

    26 Submission, p. 1139.)  To the extent any documents exist relating to those

    loans, those would be at Palencar's home.  (Michael Palencar Depo., pp. 43, 45,

    53, 54, 57, 58, 59, 60.)

- Teton purchased a Cessna aircraft in 2001, and traded it in on a Piper aircraft in

    2004.  (It was the Cessna that was seized by Schlossberg.)  Palencar claims that

    the Cessna was owned by Teton. The FAA registration documents show it being

owned by Palencar. Palencar claims that the registration is wrong, and his signature on the FAA registration is a forgery. (*Id.* at 30, 31, 32, 33, 115, 116, 119.)

- Palencar does not recall there being any discussions with the other shareholders concerning the purchase of the Cessna, and other shareholders were not involved in the transaction. Palencar signed the check for the plane on behalf of Teton and he got the plane registered. The purchase of the aircraft was made using Teton's funds. (*Id.* at 33-36.)

- Palencar was the only person within Teton who had a pilot's license, and no one else used the plane. (*Id.* at 35, 36.)

- Palencar used the plane for pleasure, and other business, but not for Teton's business. (*Id.* at 36-40.)

- Palencar asserts that some of the accounts seized by Schlossberg were owned by Teton. (*Id.* at 108-111.)

- Following Schlossberg's account to the Family Court Schlossberg was ordered to pay to Michael Palencar the value of the liquidated, seized assets ($87,852.23), less Schlossberg's approved fee of $35,000. Schlossberg paid to Palencar's attorney Robert A. Aitcheson the amount of $52,852.23. (Schlossberg Affidavit filed herewith.) Palencar received that amount from Aitcheson. However, Palencar did not inform anyone at Teton that he had received that money,

believing he had no obligation to do so.  (Michael Palencar Depo., pp. 106, 112, 113, 145.)

- Palencar used that money which was in part money from liquidated assets of Teton for his personal use.  He spent that money on himself, with none of that money being returned to Teton or being used for Teton's benefit.  (*Id.* at 112.)

It is understandable that Plaintiff now attempts to preclude this type of evidence from being presented since the same evidence was presented as part of Defendant's Motion for Summary Judgment, and was not contested or disputed by Plaintiff in any respect.  Defendant suggests that Plaintiff requests preclusion of this evidence not because it is irrelevant, but instead because it cannot be rebutted by Plaintiff.

In its Motion in Limine Plaintiff contends that Defendant is asking this Court to pierce the corporate veil of Teton and that such would deprive Teton's shareholders of their interest in Teton, and therefore Teton should be required to file a third party complaint against all four Teton shareholders.  The Order and Judgment of the Tenth Circuit on its face does not require that.  The Order simply requires that there be "colorable evidence" justifying piercing the corporate veil.  Defendant has no intention of requesting that this Court pierce the corporate veil of Teton, but it only intends to present undisputed colorable evidence that piercing the corporate veil would be justified, and thus that Defendant is entitled to absolute immunity.

Plaintiff suggests that the question should not be whether there **is** evidence that Teton was Palencar's alter ego, but instead whether there **was** such evidence five years ago when Teton's assets were seized by Defendant. However, the Order and Judgment of the Tenth Circuit does not support that argument. In the Order's footnote 3 the Tenth Circuit stated "After all, unless there **is** some evidence that TMS was simply Mr. Palencar's alter ego, then Mr. Schlossberg must respect TMS' status as a separate entity." Furthermore, from Schlossberg's perspective, he had an order from the West Virginia Family Court that permitted him to pierce the corporate veil of Teton, and thus Schlossberg had evidence that the corporate veil should be pierced. The Family Court's Order of 13 February 2003 clearly stated that Schlossberg was to "seize any assets that (Palencar) has an ownership interest therein to make them available to meet any Order of equitable distribution, alimony, child support, attorney's fees and suit money to be entered herein…". The Order could hardly have been made more clear that Schlossberg was to seize the assets of Teton since it is undisputed that at all times relevant hereto Palencar had an ownership interest in Teton.

Plaintiff argues that such an order is void and not lawful since the Family Court did not have jurisdiction over Teton in the divorce proceedings. However, that argument misses the mark and is not relevant to the question as to whether Schlossberg is immune. The question is not whether the orders were lawful (which is an argument lost by

Teton in its suit against Judge Wertman), but instead whether the orders were "facially

valid".

> Turney contends that the defendants in this case are not entitled to absolute quasi-judicial immunity because Judge Wolking's order was not "facially valid" insofar as it violated several Oklahoma statutes. We need not address these arguments. Even assuming that the order was infirm as a matter of state law, it was facially valid. "Facially valid" does not mean "lawful." An erroneous order can be valid.
>
> To accept so narrow a conception of facial validity would eliminate much of the immunity granted just last year in Valdez. State officials "must not be required to act as pseudo-appellate courts scrutinizing the orders of judges," but subjecting them to liability for executing an order because the order did not measure up to statutory standards would have just that effect. To allow plaintiffs to bring suit any time a state agent executes a judicial order which does not fulfill every legal requirement would make the agent "a 'lightning rod for harassing litigation aimed at judicial orders.'"*Id.* Simple fairness requires that state officers "not be called upon to answer for the legality of decisions which they are powerless to control." *Valdez v. City & County of Denver*, 878 F.2d at 1289.
>
> A narrow conception of facial validity also would deprive the court of most of the benefit it derives from the existence of quasi-judicial immunity for officers carrying out its orders. "'The fearless and unhesitating execution of court orders is essential if the court's authority and ability to function are to remain uncompromised,'" but state officers subject to litigation "might neglect the execution" of those orders. "A fear of bringing down litigation on the (officer executing the order) might color a court's judgment in some cases." If the court ignored the danger of such suits, "tension between trial judges and those officials responsible for enforcing their orders inevitably would result." "The public interest demands strict adherence to judicial decrees,", especially with respect to emergency detention orders, for immediate treatment often is necessary and the class of officials qualified to carry out the order is limited.

*Turney v. O'Toole*, 898 F.2d 1470, 1473 (Tenth Cir. 1990)

The Family Court issued an order that was facially valid that authorized Schlossberg to "seize any assets that Palencar had an ownership interest in." And, there is substantial evidence, which is essentially uncontested, that at all times relevant hereto Teton was the alter ego of Michael Palencar. That evidence is relevant to what the parties, this Court, and the Tenth Circuit Court of Appeals have said is a relevant issue. Defendant should be permitted to offer that evidence, and Plaintiff's Motion in Limine should be denied.

Dated: 5 November 2009.

ROGER SCHLOSSBERG, Defendant

BY: _____
GARY R. SCOTT, #5-1939
HIRST APPLEGATE, LLP
Attorneys for Defendant
1720 Carey Avenue, Suite 200
P. O. Box 1083
Cheyenne, WY 82003
(307-632-0541

## CERTIFICATE OF SERVICE

I certify the foregoing *Defendant's Reply to Plaintiff's Motion in Limine* was served upon all parties to this action pursuant to the Federal Rules of Civil Procedure on 5 November 2009, and that copies were served as follows:

C. M. Aron/Galen Woelk
Aron and Henning, LLP
1472 North 5th Street, Suite 201
Laramie, WY 82072

[   ] U.S. MAIL
[   ] FED EX
[   ] FAX
[   ] HAND DELIVERED
[ ✓ ] ELECTRONIC MAIL

_____
OF HIRST APPLEGATE, LLP
Attorneys for Defendant

**HIRST APPLEGATE, LLP**
LAW OFFICES
1720 CAREY AVENUE, SUITE 200
P.O. BOX 1083
CHEYENNE, WYOMING 82003-1083

- 11 -